DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Ramon Wright, appeals his criminal conviction in the Summit County Court of Common Pleas. We affirm.
Wright was convicted of two counts of aggravated murder with death specifications, in violation of R.C. 2903.01(B) and R.C.2929.04(A)(5); one count of attempted aggravated murder, in violation of R.C. 2923.02; one count of aggravated burglary, in violation of R.C. 2911.11(A)(3); and one count of aggravated arson, in violation of R.C. 2909.02(A)(1). A death sentence was not imposed. He appeals his convictions, naming two assignments of error.
 I. The prosecution failed to adduce sufficient evidence to satisfy the "specific intention" element of the offense of aggravated murder.
Under this assignment of error, Wright argues there was insufficient evidence to support the jury's determination that he was guilty of aggravated murder. Specifically, he claims the state failed to produce sufficient evidence of his intent to commit murder, as required by R.C. 2903.01(B).
Where a defendant appeals a criminal conviction based on claims of insufficient evidence, "A reviewing court will not reverse a jury verdict when there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eley
(1978), 56 Ohio St.2d 169, syllabus. "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." Jackson v.Virginia (1979), 443 U.S. 307, 319, 61 L.Ed.2d 560, 573 (emphasissic). Viewing the evidence in this light, then, we must ask ourselves whether any rational trier of fact could have found, beyond a reasonable doubt, that Wright intended to commit aggravated murder. State v. Williamson (July 13, 1994), Summit App. No. 16551, unreported, citing Jackson, supra at 318-319,61 L.Ed.2d at 572-573. "[I]ntent * * * is not susceptible of objective proof. * * * [I]ntent can be determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." State v. Garner (1995), 74 Ohio St.3d 49,60.
In this case, there was testimony at trial that Wright forcefully entered a house and, knowing there were individuals inside, proceeded to walk around that house setting fire to various items with a lighter. There was testimony that prior to entering the house, Wright cut the phone wires, thereby preventing the victims inside from calling for help. There was also testimony that as Wright drove away from the scene, fire could be seen inside the house through a window.
We find that a rational trier of fact could have concluded, beyond any reasonable doubt, that by cutting the telephone wires and thereafter setting multiple fires inside a home known to be occupied by several individuals, Wright intended to commit murder. See Garner, supra. We therefore find there was sufficient evidence to support Wright's convictions of aggravated murder. His first assignment of error is overruled.
 II. The prosecution violated the "Batson Rule" in excluding potential jurors solely on the basis of race.
Wright, an African-American, next argues the state improperly discriminated during jury selection by exercising a peremptory challenge to excuse an African-American female solely on the basis of her race. Wright argues in his brief that the state offered no explanation for excusing juror number sixty, a black female. This argument is entirely misplaced, however, as the record reflects the state did not challenge this juror. Both parties indicated they were satisfied with the jury, as impaneled, before juror number sixty was ever reached. The record does reflect the state exercised four peremptory challenges before the jury of twelve was seated. The first, third and fourth were exercised against white jurors. The second was exercised against a black female, juror number six, who was thereafter replaced by another black female juror who ultimately served on the panel. Despite Wright's apparently confused argument on appeal, we will proceed to determine the propriety of the dismissal of juror number six, as she was the only black juror challenged by the state.
Historically, peremptory challenges have been properly exercised as a means of removing any potential juror a party believes to be more likely to find in favor of the opponent, regardless of the reason for thinking so. State v. McElrath
(1996), 114 Ohio App.3d 516, 520. However, in Batson v. Kentucky
(1986), 476 U.S. 79, 90 L.Ed.2d 69, the United States Supreme Court limited these challenges somewhat, holding the Equal Protection Clause forbids the state to challenge potential jurors solely on the basis of their race. Id. at 89, 90 L.Ed.2d at 83. The court set forth a three-part test for determining when a juror has been improperly excluded. First, the burden is on the defendant alleging discriminatory selection to set forth a primafacie case of purposeful discrimination. Id. at 93-94,90 L.Ed.2d at 85-86. In meeting this burden, the defendant must show a) that he is a member of a cognizable racial group, b) that the state has exercised peremptory challenges to remove from the venire members of the defendant's race, and c) that the facts and circumstances raise an inference that the prosecutor excluded the veniremen solely on the basis of race. Id. at 96, 90 L.Ed.2d at 87-88. Second, once the defendant makes the requisite showing, the burden shifts to the state to set forth a racially neutral explanation for the challenge. Id. at 97, 90 L.Ed.2d at 88. This explanation need not rise to the level of a challenge for cause, but must be more that a simple denial of a racially discriminatory motive.Id. Third, the trial court must determine if the defendant has established purposeful discrimination, in light of the state's explanation. Id. at 98, 90 L.Ed.2d at 88-89.
In this case, the state argues Wright never satisfied the first step of the Batson test because he failed to set forth aprima facie showing of purposeful discrimination. Wright argues he did satisfy this step and that the state thereafter failed to satisfy the second step because it offered no racially neutral explanation for its challenge. Because we find the state did offer a sufficient, race neutral explanation for its challenge, we find Wright's success or failure in setting forth a proper primafacie case to be a moot issue. See Hernandez v. New York (1991),500 U.S. 352, 359, 114 L.Ed.2d 395, 405.
Upon Wright's objection to the exclusion of juror number six, the trial court immediately overruled the objection, apparently concluding Wright had not met his prima facie burden. Although the lower court did not require it, the state, in the exercise of precaution, stated the following:
 If a race neutral reason is necessary, I want the record to be clear the reason we excused her is because she confused Detective Culver and myself when Roger had questioned her about her brother who was at one time a police officer, and she was asked if she knew any of the officers that were testifying and Roger mentioned my name concerning questions that I had asked and she absolutely confused Sergeant Culver and myself.
 Secondly, she had a difficult time understanding the concept of the defendant not testifying. Attorney Davidson did ask her some more questions about that and specifically spent some time explaining that concept to her, something he didn't do individually with any other member of the panel.
So those are the two reasons why we excused her.
"The second step of [the Batson test] does not demand an explanation that is persuasive, or even plausible. `* * * Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"Purkett v. Elem (1995), 514 U.S. ___, 131 L.Ed.2d 834, 839, quoting Hernandez, supra at 360, 114 L.Ed.2d at 406. "The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely a pretext for exclusion on the basis of race." Hicks v. Westinghouse Materials Co. (1997), 78 Ohio St.3d 95,98, citing Hernandez, supra at 363, 114 L.Ed.2d at 408.
The reasons given in this case for excluding juror number six; her confusing one of the prosecutors with a police officer even after lengthy voir dire questioning by the prosecutor, and her difficulty in understanding certain basic concepts, fail to indicate any inherent discriminatory intent on the part of the state. The reasons are, therefore, race neutral, and they satisfy step two of the Batson test. See Purkett, supra at ___,131 L.Ed.2d at 840.
In this case, the lower court did not specifically proceed to step three because it apparently found that Wright never met his burden under step one. Even assuming, arguendo, the court erred and Wright did meet his burden, we find no prejudice. We discern no discriminatory intent inherent in the reasons offered by the state. Having found no Batson violation, Wright's second assignment of error is overruled. The judgment of the lower court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ DANIEL B. QUILLIN
FOR THE COURT
DICKINSON, J.
REECE, J.
CONCUR