DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, George Trikilis, appeals from his convictions in the Medina County Court of Common Pleas. This Court reverses.
 I. {¶ 2} Appellant was first indicted on June 5, 2003, on charges that he was trafficking marijuana and anabolic steroids. On February 19, 2004, while out on bond, Appellant was indicted for burglary.
 {¶ 3} Appellant's drug offenses resulted from an investigation led by Agent Michael Barnhardt of the Medina County Drug Task Force. Through a confidential informant, Agent Barnhardt was able to set up controlled buys with Appellant. In addition, Appellant placed Agent Barnhardt into contact with his brother, Nick Trikilis, to facilitate further drug buys. Following his indictment for the drug offenses, Appellant called the Task Force numerous times on February 11 and 12, 2004, despite the Task Force repeatedly informing him to stop calling. In addition, Appellant called Agent Barnhardt and asked him whether he had any children. These latter actions resulted in the amendment of the June 5, 2003 indictment, adding charges of intimidation and telephone harassment.
 {¶ 4} While out on bond from his original indictment, Appellant approached the residence of Alcohol, Tobacco, 
Firearms ("ATF") Agent William Hall. Appellant approached Agent Hall and stated that he knew that Agent Hall worked for ATF. Appellant testified at trial that he approached Agent Hall to give him a microcassette of a recording Appellant had made. Agent Hall retreated into his home to call the police as a result of Appellant's actions. Upon returning to his garage, Agent Hall found that Appellant had entered his garage. As a result of his actions, Appellant was indicted for burglary.
 {¶ 5} While being held in a cell in the booking unit of the jail, Appellant began to act in a peculiar manner. At one point, Appellant removed all of his clothes and began to shadow box. When officers instructed him to cease his activities and put his clothes back on, Appellant complied. In addition, Appellant began removing parts of his cell. He removed several screws from the smoke detector and a vent from the ceiling. He pushed several of these articles under the door of the cell to the officers. Appellant also testified that he swallowed some of the items, including screws, when the officers did not remove them from his cell. Appellant then removed the smoke detector cover and placed it on his head. Appellant stated that the smoke detector cover "was the only thing protecting him." When officers requested the cover, Appellant handed it over to them. However, when officers requested that Appellant hand over the smoke detector itself, Appellant began beating on the window of his cell. As a result, the officer in charge ordered that Appellant be placed in a restraining chair.
 {¶ 6} In order to place Appellant in the restraining chair, approximately six officers were called to his cell. The cell door was then electronically opened and Appellant was ordered to come out of the cell and sit in the chair. Appellant did not comply with the officers' orders. Appellant ran out of his cell with his head down and charged into Officer Christopher Cavanaugh, knocking him to the ground. Appellant then ran around the booking room before being subdued by the remaining officers. Before Appellant was subdued, however, Officer David Wright was struck in the face. Officer Wright testified that he was struck by Appellant while Appellant was flailing his arms. Officer Wright did not realize the extent of his injuries until the day after the incident, when he discovered that his eye had nearly swollen shut. Officer Wright then had x-rays taken and it was discovered that a bone in his cheek had been broken during the melee. As a result of his actions at the jail, Appellant's March 3, 2004 indictment was amended to add the assault and felonious assault charges.
 {¶ 7} At Appellant's requests, all of the charges against him were consolidated into one trial. Accordingly, at trial, Appellant faced the following charges: one count of trafficking in drugs, a violation of R.C. 2925.03(A)(1)/(C)(3)(a); one count of trafficking in drugs, a violation of R.C.2925.03(A)(1)/(C)(3)(d); two counts of trafficking in drugs, a violation of R.C. 2925.03(A)(1)/(C)(2)(c); one count of complicity to commit trafficking in drugs, a violation of R.C.2925.03(A)(1)/(C)(3)(a) and R.C. 2923.03(A)(3); one count of burglary, in violation of R.C. 2911.12(A)(4); one count of intimidation, a violation of R.C. 2921.04(B); one count of telephone harassment, a violation of R.C. 2917.21(A)(5); one count of felonious assault, a violation of R.C. 2903.11(A)(1); and one count of assault, a violation of R.C. 2903.13(A)(2)(a).
 {¶ 8} Prior to trial, Appellant was appointed counsel. During numerous pretrial proceedings, Appellant expressed his dissatisfaction with counsel. When asked by the trial court, however, Appellant stated that he did not wish to proceed pro se. Despite his statements, the trial court noted in a journal entry that Appellant would proceed pro se and that his appointed counsel would act as standby counsel. As a result, Appellant conducted nearly the entire trial acting as his own attorney.
 {¶ 9} During the course of the trial, Appellant contested very few of the facts alleged in the indictments against him. Instead, Appellant chose to focus his defense on an alleged conspiracy against his family. Appellant claimed that Medina County public officials had conspired and continued to conspire against his family to deprive them of liberty and property for more than two decades. In an attempt to support his theory, Appellant's standby counsel subpoenaed over forty witnesses, including active judges and attorneys. Our review of the record indicates that Appellant's standby counsel exerted an extraordinary effort to assist Appellant in his defense, an effort that was repeatedly thwarted by Appellant, against his own interest. In addition, Appellant called his father, Michael Trikilis, to testify to expound on the details of the conspiracy. We note that the trial court gave Appellant considerable latitude to pursue this theory despite its lack of a factual foundation.
 {¶ 10} As a result of Appellant contesting very few of the facts presented by State's witnesses, the jury returned guilty verdicts on each count in the indictment. Appellant was sentenced to an aggregate prison sentence of nine and one-half years. Appellant timely appealed from his convictions, raising nine assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"[APPELLANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT DID NOT PROPERLY ADVISE HIM OF THE DANGERS OF SELF REPRESENTATION; [APPELLANT] DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVE HIS RIGHT TO COUNSEL UNDER THE CONSTITUTION OR CRIMINAL RULE 44(C)."
 {¶ 11} In his first assignment of error, Appellant argues that the trial court did not properly warn him of the dangers of self-representation before permitting him to proceed pro se. We agree.
 {¶ 12} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v. Gibson (1976),45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v.California (1975), 422 U.S. 806. However, "[c]ourts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel." (Citations omitted.) State v. Dyer
(1996), 117 Ohio App.3d 92, 95. Accordingly, "a valid waiver affirmatively must appear in the record, and the State bears the burden of overcoming the presumption against a valid waiver."State v. Martin ("Martin I"), 8th Dist. No. 80198, 2003-Ohio-1499, citing Dyer, 117 Ohio App.3d at 95. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right."Gibson, 45 Ohio St.2d at paragraph two of the syllabus.
 {¶ 13} In determining the sufficiency of the trial court's inquiry in the context of a defendant's waiver of counsel, this Court reviews the totality of the circumstances. State v.Ragle, 9th Dist. No. 22137, 2005-Ohio-590, at ¶ 12. In verifying that a waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self representation. See Gibson, 45 Ohio St.2d at 377. See, also,Faretta, 422 U.S. at 835; State v. Weiss (1993),92 Ohio App.3d 681, 686. While no one factor is dispositive, the trial court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances. See Gibson,45 Ohio St.2d at 377, citing Von Moltke v. Gillies (1948), 332 U.S. 708. We reaffirm our holding, however, that the trial court's discussion of possible defenses and mitigating circumstances need not befact specific. Ragle, at ¶ 12. In order to avoid placing the trial court in the role of an adversary, a broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient. A court may also consider various other factors, including the defendant's age, education, and legal experience. State v. Doane (1990), 69 Ohio App.3d 638,647.
 {¶ 14} Additionally, Crim.R. 44(C) requires that the trial court obtain a signed, written waiver by the defendant in "serious offense cases." A "serious offense" is defined as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). While a signed waiver is the preferred practice, the absence of a waiver is harmless error if the trial court has substantially complied with Crim.R. 44(A). State v. Martin ("Martin II"),103 Ohio St.3d 385, 2004-Ohio-5471, at ¶ 39.
 {¶ 15} In the instant matter, the trial court noted in its journal entry on August 25, 2004 as follows: "The Court also is permitting the defendant to represent himself personally, with [appointed counsel] taking an advisory role." Despite this journal entry, the State contends that Appellant was represented throughout the trial. Our review of the record, however, reveals that Appellant proceeded pro se with standby counsel. Our conclusion is supported by the following facts. Twenty-one witnesses gave testimony at Appellant's trial. Of these witnesses, Appellant questioned twenty. His standby counsel conducted only the direct examination of Appellant and a portion of one cross-examination. Appellant gave an opening statement and began to give a closing statement. His standby counsel completed the closing statement when Appellant refused to follow the instructions given by the trial court. As Appellant conducted large portions of the trial pro se, we now examine whether he was adequately warned of the dangers of self-representation. MartinII, at ¶ 30.
 {¶ 16} We begin by noting that similar to the defendant inMartin II, Appellant never unequivocally waived his right to counsel. Appellant attempted on several occasions to fire his appointed counsel. The trial court, however, denied each of these motions as groundless. The following colloquy took place regarding the appointment of counsel:
The Court: "Apparently, according to [appointed counsel], you've expressed displeasure of being represented by court-appointed counsel. Is that correct? You don't want a court-appointed attorney?
Appellant: "No. I never said that. I never said that.
* * *
The Court: "Do you want to represent yourself?
Appellant: "No."
 {¶ 17} In addition, the record contains no evidence that Appellant was informed of any of the dangers of self-representation. The trial court informed Appellant that he must follow the same rules as a lawyer and that trials take great skill. There is no indication that the trial court adequately explained to Appellant "the nature of the charges, the statutory offenses include within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter[.]" Martin II, at ¶ 43. The record also does not demonstrate that Appellant had any prior experience with the legal system. The State's contends that any error with regard to informing Appellant of the dangers of self-representation was harmless because Appellant's standby counsel was competent. We, however, can find no authority to support the State's contentions that the trial court's use of standby counsel can remedy the failure to inform Appellant of the dangers of self-representation; nor can we find any support for the State's position that standby counsel's knowledge can be indirectly imputed to Appellant.
 {¶ 18} We are mindful that a defendant may insist upon participating in his trial only to assert error on appeal or to delay the proceedings. However, a proper inquiry must be made by the trial court "even when the defendant is seemingly engaging in delay tactics." Weiss, 92 Ohio App.3d at 685. While Appellant repeatedly delayed his trial by arguing that his charges stemmed from a more than two-decade-long conspiracy against his family, his actions did not eliminate the trial court's obligations to inform him of the dangers of self-representation. Once the trial court was on notice that Appellant intended to conduct much of his trial pro se, the court was duty bound to inform him of the dangers of proceeding pro se. As Appellant was not informed of the dangers of self-representation, we cannot find that he knowingly, voluntarily, and intelligently waive his right to counsel. Further, as the trial court did not substantially comply with Crim.R. 44(A), the absence of a signed waiver cannot be said to be harmless error. See Martin II, at ¶ 39. Accordingly, Appellant's first assignment of error is sustained.
 {¶ 19} Although this Court's disposition of Appellant's first assignment of error renders moot the remaining assignments of error, "to the extent that they raise arguments regarding the sufficiency of the evidence they must be addressed, since a reversal on sufficiency grounds would bar retrial on the counts affected." State v. Suber, 154 Ohio App.3d 681, 2003-Ohio-5210, at ¶ 30, citing Tibbs v. Florida (1982), 457 U.S. 31,72 L.Ed.2d 652. This Court, therefore, will address Appellant's sufficiency arguments which are presented in his second, fourth, and fifth assignments of error.
 ASSIGNMENT OF ERROR II
"THE EVIDENCE IN SUPPORT OF THE CHARGE OF FELONIOUS ASSAULT WAS INSUFFICIENT TO PROVE GUILT BEYOND A REASONABLE DOUBT IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION; THE VERDICT WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR IV
"THE EVIDENCE IN SUPPORT OF THE INTIMIDATION CHARGE WAS INSUFFICIENT TO SUSTAIN A CONVICTION UNDER THEFOURTEENTH AMENDMENT."
 ASSIGNMENT OF ERROR V
"THE EVIDENCE IN SUPPORT OF THE BURGLARY CHARGE WAS INSUFFICIENT TO SUSTAIN A CONVICTION UNDER THEFOURTEENTH AMENDMENT."
 {¶ 20} In his second, fourth, and fifth assignments of error, Appellant argues that insufficient evidence was presented to support his convictions for felonious assault, intimidation, and burglary. This Court disagrees.
 {¶ 21} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
Felonious Assault
 {¶ 22} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1) which provides that "No person shall knowingly * * * [c]ause serious physical harm to another[.]" Specifically, Appellant appears to allege that the evidence did not prove that he acted knowingly and that Officer Wright's testimony was insufficient to establish that Appellant had struck him.[1] We find that Appellant's contentions lack merit.
 {¶ 23} 2901.22(B) provides that a person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." The assault on Officer Wright occurred when officers attempted to place Appellant in a restraining chair. Upon the door to his cell being opened, Appellant was ordered to sit in the chair. He did not comply with the officer's orders. Instead, Appellant charged at Officer Cavanaugh with his head down and knocked him to the ground. The other officers in the booking department then attempted to subdue Appellant. During that scuffle, Officer Wright was struck in the face. Officer Wright testified that during the scuffle, Appellant was flailing his arms, and the officer was adamant in his testimony that his injuries were not sustained as a result of the actions of other officers. He noted that he felt pain immediately after being face-to-face with Appellant and observing him flailing his arms.
 {¶ 24} Viewing the evidence in a light most favorable to the State, we find that Appellant's actions of attacking one officer and then flailing his arms while being restrained are sufficient to demonstrate that he knew that his actions would "probably cause a certain result," i.e., an injury to an officer. Further, Officer Wright's testimony established that he was struck by Appellant. Accordingly, Appellant's challenge to the sufficiency of the evidence presented in support of his felonious assault is overruled.
Intimidation
 {¶ 25} Appellant was convicted of intimidation, in violation of R.C. 2921.04(B) which provides as follows:
"No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
Appellant's intimidation charge resulted from two phone calls placed to Agent Barnhardt. These calls were made during the same time period in which Appellant repeatedly call the Medina County Drug Task Force, leading to his conviction for telephone harassment. At the time of the calls, Agent Barnhardt was investigating Appellant's drug offenses. During the first call, Appellant asked Agent Barnhardt if he had any children. When Agent Barnhardt suggested that they record the conversation, Appellant immediately moved on to a different subject area. Approximately an hour later, Agent Barnhardt received a call from Appellant's four-year old daughter, singing the theme song from the Barney the Dinosaur television show. Appellant then took the phone and scolded his daughter, asking her "how, at four years of age, would she know how to contact the drug task force and leave an `I love you' message?"
 {¶ 26} Agent Barnhardt testified that he felt that Appellant was threatening his family through these calls. He noted as follows:
"If you were a friend or someone that I dealt with on a normal basis for years, it may have been taken differently; however, you're a defendant in a case that I was on."
Agent Barnhardt went on to testify that he did in fact have children and felt that Appellant was threatening them in an attempt to stop him from testifying against Appellant. In contrast, Appellant explained that he was attempting to make Agent Barnhardt think about how painful it would be to removed from his children, as Appellant had been because of the charges filed against him.
 {¶ 27} Viewing the evidence in a light most favorable to the State, we find that reasonable minds could conclude that Appellant's statements were disguised threats designed to stop Agent Barnhardt from testifying. Accordingly, Appellant's sufficiency challenge to his intimidation conviction lacks merit.
Burglary
 {¶ 28} Appellant was convicted of burglary, in violation of R.C. 2911.12(A)(4) which provides as follows:
"No person, by force, stealth, or deception, shall * * * [t]respass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 29} Appellant argues that the State provided insufficient evidence with respect to two of the elements of burglary. Appellant contends that the State did not provide evidence that he acted with stealth or deception and that the State did not provide evidence that he trespassed in a habitation. We find that both of Appellant's assertions lack merit.
 {¶ 30} Our sister courts have consistently found that an attached garage meets the requirements of a permanent or temporary habitation. See State v. Ward (1993),85 Ohio App.3d 537; State v. Barker (Sept. 27, 2001), 5th Dist. No. 01-C-A-0027; State v. Wells (Jan. 19, 1994), 2d Dist. No. 92-CA-122. We agree that
"an attached garage with a door to the outside is sufficiently part of a residential structure that persons are reasonably likely to be present at any time of day, so that a trespass [into the garage] * * * involves the inherent danger to the public with which the General Assembly was concerned when it enacted the [burglary] statute." Wells, supra.
Appellant does not contest that he entered the attached garage. Accordingly, the State provided sufficient evidence with respect to a trespass in a habitation.
 {¶ 31} The Revised Code does not provide a definition of "stealth." A reasonable person, however, would understand stealth to mean "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." State v. Lane (1976),50 Ohio App.2d 41, 47. Viewing the evidence in a light most favorable to the State, we find that Appellant's entry into the garage was accomplished by stealth.
 {¶ 32} Appellant approached Agent Hall while the agent was vacuuming out his minivan in his driveway. Agent Hall testified that he was startled by Appellant's sudden appearance behind him. More central to our analysis, however, is the method by which Appellant entered the garage. Contrary to Appellant's assertion, he did not simply enter an open garage door. Agent Hall testified that Appellant did not enter the garage until after Agent Hall had entered his home to call the police. By waiting until the garage was unoccupied to enter, we find that Appellant acted in the required "secret" fashion to avoid detection. Accordingly, Appellant's challenge to the sufficiency of the evidence supporting his burglary conviction is overruled.
 ASSIGNMENT OF ERROR III
"PERMITTING MR. WRIGHT TO TESTIFY ABOUT THE CONTENTS OF THE EMERGENCY ROOM HOSPITAL RECORDS AND THE INTRODUCTION OF THE HOSPITAL RECORDS WITHOUT TESTIMONY FROM A PHYSICIAN VIOLATED [APPELLANT'S] CONFRONTATION RIGHTS UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 ASSIGNMENT OF ERROR VI
"THE PROSECUTOR'S COMMENT ON [APPELLANT'S] RIGHT TO REMAIN SILENT AFTER BEING MIRANDIZED WAS IN VIOLATION OF [APPELLANT'S]FIFTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION."
 ASSIGNMENT OF ERROR VII
"THE TRIAL COURT VIOLATED [APPELLANT'S] SIXTH AMENDMENT RIGHT TO REPRESENT ONESELF BY NOT PERMITTING HIM TO MAKE CLOSING ARGUMENT."
 ASSIGNMENT OF ERROR VIII
"THE TRIAL COURT'S DECISION TO IMPOSE MORE THAN THE MINIMAL TERMS ON ALL COUNTS AND IMPOSE CONSECUTIVE TERMS ON SOME COUNTS WAS UNSUPPORTED BY THE EVIDENCE AND WAS OTHERWISE CONTRARY TO LAW. R.C. 2953.08."
 ASSIGNMENT OF ERROR IX
"THE TRIAL JUDGE'S DECISION TO SENTENCE [APPELLANT] TO MORE THAN THE MINIMUM TERMS AND IN SOME CASES CONSECUTIVELY TO OTHER COUNTS BASED ON CERTAIN FINDINGS UNDER R.C. 2929.14(B) AND2929.14(E) VIOLATED [APPELLANT'S] RIGHT TO A JURY TRIAL UNDER THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 33} Given this Court's resolution of Appellant's first assignment of error, his remaining assignments of error and his challenge to the weight of the evidence in his second assignment of error are moot, and this Court declines to address them. See App.R. 12(A)(1)(c).
 III. {¶ 34} Appellant's first assignment of error is sustained. Appellant's sufficiency of the evidence arguments are overruled. Appellant's remaining assignments of error are moot and we decline to address them. The judgment of the Medina County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Whitmore, P.J., Batchelder, J., Concur.
[1] We note that Appellant discusses the seriousness of Officer Wright's injury in another assignment of error, but it is not addressed in his assignment of error which raised the sufficiency challenge, so we do not address it. See App.R. 16(A)(7).