DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Marrion Smith has appealed from his convictions in the Summit County Court of Common Pleas. This Court reverses and remands.
 I {¶ 2} On June 24, 2005, Defendant-Appellant Marrion Smith was indicted by supplemental indictment on one count of theft, in violation of R.C.2913.02(A)(1)/(A)(4), a felony of the fifth degree; one count of grand theft, in violation of R.C. 2913.02(A)(1)/(A)(4), a felony of the fourth degree; one count of aggravated burglary, in violation of R.C.2911.11(A)(2), a felony of the first degree; one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; and two counts of kidnapping, in violation of R.C.2905.01(A)(2), felonies of the first degree. Appellant pled not guilty to the charges contained in the supplemental indictment. A jury trial commenced November 1, 2005.
 {¶ 3} Prior to trial, Appellant asserted his right to self-representation. The trial court allowed Appellant to waive counsel and appointed standby counsel. During the presentation of the State's case, Appellant changed his mind and the trial court appointed standby counsel to represent Appellant. On November 3, 2005, the jury found Appellant guilty on each count contained in the supplemental indictment. The trial court sentenced Appellant to an aggregate sentence of twenty years imprisonment.
 {¶ 4} Appellant has timely appealed, asserting four assignments of error.
 II Assignment of Error Number One "THE TRIAL COURT ERRED BECAUSE IT INADEQUATELY WARNED PRO SE DEFENDANT WITH STANDBY COUNSEL OF THE DANGERS OF SELF REPRESENTATION; AS THE COURT FAILED TO ADEQUATELY EXPLAIN THE NATURE OF THE CHARGES, FAILED TO EXPLAIN THE CHARGES STATUTORY COMPONENTS, FAILED TO DISCUSS THE RANGE OF ALLOWABLE PUNISHMENTS, FAILED TO, IN ANY WAY OR MANNER, DISCUSS POSSIBLE DEFENSES AND MITIGATING CIRCUMSTANCES, AND FAILED TO DETERMINE, PRIOR TO TRIAL, APPELLANT'S EDUCATION, EXPERIENCE AS ONE'S OWN REPRESENTATIVE IN LEGAL SYSTEM AND UNDERSTANDING OF COMPONENTS OF TRIAL."
 {¶ 5} In his first assignment of error, Appellant has argued that the trial court erred when it allowed him to proceed pro se at trial. Specifically, Appellant has argued that the trial court inadequately advised him of the dangers and disadvantages of self representation and further failed to advise him of legal considerations involving his case. This Court agrees.
 {¶ 6} "'The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.'"State v. Trikilis, 9th Dist. Nos. 04CA0096-M, 04CA0097-M,2005-Ohio-4266, at ¶ 12, quoting State v. Gibson (1976),45 Ohio St.2d 366, paragraph one of the syllabus. "'In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.'" Id., quoting Gibson, 45 Ohio St.2d at paragraph two of the syllabus.
 {¶ 7} Crim.R. 44(C) requires that waivers of counsel in "serious offense" cases be in writing. A "serious offense" is defined as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). "'While a signed waiver is the preferred practice, the absence of a waiver is harmless error if the trial court has substantially complied with Crim.R. 44(A).'" Trikilis at ¶ 14, citing State v. Martin ("Martin II"), 103 Ohio St.3d 385, 2004-Ohio-5471, at 40.
 {¶ 8} The Ohio State Supreme Court has recently reaffirmed its position that to be valid such waiver must be made with "an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."Martin II at ¶ 39, quoting Gibson, 45 Ohio St.2d at 377, quoting VonMoltke v. Gillies (1948), 332 U.S. 708, 723. In Trikilis, supra, this Court applied the factors first announced in Von Moltke and reaffirmed in Martin II:
 "In verifying that a waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self representation. While no one factor is dispositive, the trial court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances." (Internal citations omitted). Trikilis at ¶ 13, citing Gibson, 45 Ohio St.2d at 377, quoting Von Moltke, 332 U.S. at 723.
Further, "[i]n order to avoid placing the trial court in the role of an adversary" this Court reaffirmed its holding that "the trial court's discussion of possible defenses and mitigating circumstances need not befact specific" but that a "broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient." (Emphasis in original). Trikilis at ¶ 13. See also Akron v. Ragle, 9th Dist. No. 22137, 2005-Ohio-590, at ¶ 12.
 {¶ 9} In the present matter, the record indicates that the trial court did not meet the minimum standard required for accepting a valid waiver of counsel. While Appellant made it clear to the trial court that he wished to represent himself, there is no suggestion in the record of any discussion between the trial court and Appellant, or his appointed counsel, regarding the nature of the charges, the statutory offenses included within them, or the range of allowable punishments. Further, there is no discussion of possible defenses or mitigating circumstances, not even a broad one as mandated by Ragle.
 {¶ 10} Prior to its finding that Appellant's waiver was voluntary and intelligently made, the trial court conducted a discourse with him. During this discussion, the trial court: 1) informed Appellant that he would be at a serious disadvantage representing himself; 2) cautioned him that he was unfamiliar with the rules of evidence; 3) advised him that he would be held to the same standard as an attorney; and 4) informed him that his appointed counsel was a well experienced trial attorney. In response, Appellant stated that he wanted to represent himself because he believed that he could get his point across and convince the jury. Appellant further stated that he was familiar with court proceedings and understood trial procedures.
 {¶ 11} The trial court next addressed Appellant's appointed counsel, Attorney Maher. Attorney Maher confirmed Appellant's desire to represent himself and indicated the futility of the court's attempts to sway him. Attorney Maher then offered to act as standby counsel for Appellant pursuant to Martin II. At no time did the court discuss whether Appellant had been advised of the nature of the charges or the range of allowable punishments.
 {¶ 12} The above summary clearly demonstrates that the dialogue prior to the trial court's acceptance of Appellant's waiver of counsel was insufficient to effectuate a valid waiver. As in Martin II, while the trial court cautioned Appellant against self representation, it did not "adequately explain the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, or other facts essential to a broad understanding of the whole matter, per Von Moltke and Gibson." (Internal citations omitted). Martin II at ¶ 43. Therefore, Appellant was not "made aware of the dangers and disadvantages of self-representation" and the "trial court failed to substantially comply with Crim.R. 44(A) by failing to make a sufficient inquiry to determine whether [Appellant] fully understood and intelligently relinquished his right to counsel." (Internal quotations omitted). Id. at ¶ 44-45.
 {¶ 13} The State has argued that Appellant's experience during a previous trial for aggravated robbery and grand theft should preclude a finding that Appellant was unaware of the nature of the charges, range of allowable punishment, and possible defenses and mitigating factors. To the extent this argument relates to the charges of aggravated robbery and grand theft, the State could very well be correct. However, the trial in which Appellant chose to represent himself was comprised not only of aggravated robbery and grand theft charges, but kidnapping and aggravated burglary as well, charges not included in the first trial. As a result, even though Appellant had recently been party to the separate trial, it cannot be presumed that he therefore understood the nature of the offenses, the range of allowable punishment, and possible defenses and mitigating factors involved in the second trial. Accordingly, Appellant's first assignment of error is sustained.
 {¶ 14} Although this Court's treatment of Appellant's first assignment of error renders the remaining assignments of error moot, "'to the extent that they raise arguments regarding the sufficiency of the evidence they must be addressed, since a reversal on sufficiency grounds would bar retrial on the counts affected.'" Trikilis at ¶ 19, quotingState v. Suber, 154 Ohio App.3d 681, 2003-Ohio-5210, at ¶ 30. Accordingly, this Court will address Appellant's sufficiency argument which is presented in his second assignment of error.
 Assignment of Error Number Two "THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S MOTION FOR ACQUITTAL PER CRIMINAL RULE 29 AND THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} In his second assignment of error, Appellant has argued that insufficient evidence was presented to support his convictions for aggravated robbery, aggravated burglary, grand theft, theft and kidnapping. This Court disagrees.
 {¶ 16} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Accordingly, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) Jackson v. Virginia
(1979), 443 U.S. 307, 319.
 {¶ 17} Appellant was convicted of theft, in violation of R.C.2913.02(A)(1)/(A)(4), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent * * * [or] [b]y threat[.]" Appellant was also convicted of grand theft, in violation of R.C. 2913.02(A)(1)/(A)(4), with the additional element that the value of the property stolen is five thousand dollars or more and is less than one hundred thousand dollars. R.C. 2913.02(B)(2). Appellant was also convicted of aggravated burglary, in violation of R.C. 2911.11(A)(2), which provides:
 "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
Appellant was also convicted of aggravated robbery, in violation of R.C.2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" Finally, Appellant was convicted of kidnapping, in violation of R.C. 2905.01(A)(2) which provides that:
 "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[.]"
 {¶ 18} On appeal, Appellant has focused solely on the issue of identification. Appellant has contended that insufficient evidence was presented to identify him as the person who entered the victims' home, stole items of personal property, robbed James Marvin at knifepoint, and bound Mr. Marvin and his granddaughter, Hallie, to a chair and locked them in the closet.
 {¶ 19} As to the issue of identification, this Court finds that substantial circumstantial evidence was presented to prove that Appellant committed the crime. While Appellant has grounded his argument in the victims' inability to positively identify him as the perpetrator, he has ignored the compelling physical evidence admitted in the matter.
 {¶ 20} A review of some of the oral testimony is necessary to appreciate the relevance of the physical evidence. The victim James Marvin, a resident of Cuyahoga Falls, testified to the following. On May 24, 2004, he left his home at approximately 9:00 p.m. to go to work. He returned at 3:00 a.m. and was called by Hallie to her bedroom. Upon reaching her room, Mr. Marvin observed a strange man on Hallie's bed with a knife to her throat. The intruder was dressed in black and was wearing a mask and gloves. The intruder ordered him to lie on the floor and taped his hands behind his back and his legs together. The intruder had also bound Hallie in a similar fashion. The intruder discovered Mr. Marvin's Fifth Third debit card and Mr. Marvin told the suspect that he had approximately $1700 to $2000 in that account. Mr. Marvin told the intruder his personal identification number ("PIN") and that there was a Fifth Third ATM located on Graham Road.
 {¶ 21} The intruder then placed him on a chair in the closet and set Hallie on his lap. The intruder left. After a few minutes, Mr. Marvin was able to free himself because his hands were sweating and the cellophane tape had loosened. Mr. Marvin then freed Hallie and broke down the closet door. Mr. Marvin testified that he was out of the closet within five minutes. Mr. Marvin then noticed his van was gone, so he called the Cuyahoga Falls police and told the operator what had happened, that the intruder was headed towards the Fifth Third ATM on Graham Road and described the vehicle he would be in: Mr. Marvin's Dodge Caravan.
 {¶ 22} Hallie Marvin testified and corroborated in general Mr. Marvin's recollection of events, and added, in pertinent part, that the intruder had stolen her CD player.
 {¶ 23} Ralph Flynn of the Cuyahoga Falls police testified to the following. On May 25, 2004, at approximately 4:30 a.m., he received an aggravated robbery call and responded to the Fifth Third Bank on Graham road based on the information given to him. Officer Flynn observed a vehicle, later identified as Mr. Marvin's van, in the ATM drive through. When Officer Flynn attempted to block the right of way with his cruiser, the suspect attempted to ram the cruiser. Officer Flynn avoided a crash and pursued the suspect. The suspect, wearing dark clothing and a mask, crashed the vehicle, exited and continued to flee on foot. The suspect leapt over a fence and Officer Flynn was unable to apprehend the suspect. Officer Flynn then began to look for physical evidence.
 {¶ 24} The State introduced significant physical evidence linking Appellant to the crime. Such evidence included: a long kitchen knife found in Hallie's bed, a Fifth Third debit card and multiple Fifth Third ATM receipts found in Mr. Marvin's van, a Fifth Third deposit slip in the name of James Marvin found in the van, a CD player found along the suspect's escape route, a roll of clear packing tape near the wrecked van, a backpack found along the suspect's escape route containing a roll of cellophane tape and a pair of eyeglasses, various pieces of jewelry strewn from the crash site to the fence the suspect hurdled, an ATM surveillance photo, and a tee shirt which was found stuck on the fence.
 {¶ 25} This Court would like to focus on two pieces of evidence specifically. First, the ATM surveillance photo shows a man in dark clothes and mask pull up to the ATM. Noticeably, the man is wearing large, black eyeglasses above the mask, which are identical to those eyeglasses found inside the discarded backpack found along the suspect's escape route. Additionally, close scrutiny of the ATM surveillance photo reveals that the interior of the suspect's vehicle is identical to the interior of Mr. Marvin's van, as depicted in photographs taken of the van by the police.
 {¶ 26} Finally, and most convincing, is the DNA evidence obtained from the white tee shirt lost by the suspect as he fled the authorities. Linda Eveleth, of the Bureau of Criminal Investigation ("BCI") testified that the DNA profile from the underarm area of the white tee shirt was consistent with a known standard from Appellant. Ms. Eveleth further testified that the frequency of occurrence of this particular DNA profile is one in 227 billion 300 million.
 {¶ 27} Based on the substantial circumstantial evidence in this case, this Court concludes that a rational trier of fact could find that Appellant was the perpetrator of the crime. We reiterate that Appellant has not disputed that the remaining elements of the crimes were established. As such, this Court cannot say that the trial court improperly denied Appellant's Crim.R. 29 motion for acquittal.
 {¶ 28} Appellant's second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT IMPROPERLY ALLOWED IN THE INSTITUTIONAL MEDICAL RECORDS OF APPELLANT OVER OBJECTION WHEN TESTIFYING WITNESS COULD NOT AUTHENTICATE NOR IDENTIFY THE PRESCRIPTION OR WHAT IT WAS FOR AS SHE HAD NO MEDICAL TRAINING OR WHOM ISSUE IT, AS SHE DIDN'T AND COULDN'T IDENTIFY THE ISSUING PHYSICIAN OR SIGNATURE AT BOTTOM OF PRESCRIPTION."
 Assignment of Error Number Four "THE TRIAL COURT IMPROPERLY SENTENCED APPELLANT TO 20 YEARS BECAUSE THE SENTENCE VIOLATED THE MANDATES OF STATE V. FOSTER, AS THE SENTENCE RELIES UPON R.C. 2929.14(C) AND R.C. 29292.14(E)(4), [SIC] THE REQUISITE FACTUAL FINDINGS FOR MAXIMUM PRISON SENTENCES AND CONSECUTIVE SENTENCES, HAVE BEEN DEEMED UNCONSTITUTIONAL."
 {¶ 29} Given this Court's resolution of Appellant's first assignment of error, his remaining assignments of error and the challenge to the weight of the evidence included in his second assignment of error are moot, and this Court declines to address them. See App.R. 12(A)(1)(c).
 III {¶ 30} Appellant's first assignment of error is sustained. Appellant's sufficiency of the evidence argument contained in his second assignment of error is overruled. Appellant's remaining assignments of error and arguments are moot and this Court declines to address them. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
MOORE, P. J., BOYLE, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)