DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, George Trikilis, appeals the decision of the Medina County Court of Common Pleas, which found him guilty of assault at a jail facility. This Court affirms.
 I. {¶ 2} Mr. Trikilis was first indicted on June 5, 2003, on charges that he was trafficking marijuana and anabolic steroids. On February 19, 2004, while out on bond, Mr. Trikilis was indicted for burglary.
 {¶ 3} Mr. Trikilis' drug offenses resulted from an investigation led by Agent Michael Barnhardt of the Medina County Drug Task Force. Through a *Page 2 
confidential informant, Agent Barnhardt was able to set up controlled buys with Mr. Trikilis. In addition, Mr. Trikilis placed Agent Barnhardt into contact with his brother, Nick Trikilis, to facilitate further drug buys. Following his indictment for the drug offenses, Mr. Trikilis called the Task Force numerous times on February 11 and 12, 2004, despite the Task Force repeatedly informing him to stop calling. In addition, Mr. Trikilis called Agent Barnhardt and asked him whether he had any children. These latter actions resulted in the amendment of the June 5, 2003 indictment, adding charges of intimidation and telephone harassment.
 {¶ 4} While out on bond from his original indictment, Mr. Trikilis approached the residence of Alcohol, Tobacco, Firearms ("ATF") Agent William Hall. Mr. Trikilis approached Agent Hall and stated that he knew that Agent Hall worked for ATF. Mr. Trikilis testified at trial that he approached Agent Hall to give him a micro cassette of a recording Mr. Trikilis had made. Agent Hall retreated into his home to call the police as a result of Mr. Trikilis' actions. Upon returning to his garage, Agent Hall found that Mr. Trikilis had entered his garage. As a result of his actions, Mr. Trikilis was indicted for burglary.
 {¶ 5} While being held in a cell in the booking unit of the jail, Mr. Trikilis began to act in a peculiar manner. At one point, Mr. Trikilis removed all of his clothes and began to shadow box. When officers instructed him to cease his activities and put his clothes back on, Mr. Trikilis complied. In addition, Mr. *Page 3 
Trikilis began removing parts of his cell. He removed several screws from the smoke detector and a vent from the ceiling. He pushed several of these articles under the door of the cell to the officers. Mr. Trikilis also testified that he swallowed some of the items, including screws, when the officers did not remove them from his cell. Mr. Trikilis then removed the smoke detector cover and placed it on his head. Mr. Trikilis stated that the smoke detector cover "was the only thing protecting him." When officers requested the cover, Mr. Trikilis handed it over to them. However, when officers requested that Mr. Trikilis hand over the smoke detector itself, Mr. Trikilis began beating on the window of his cell. As a result, the officer in charge ordered that Mr. Trikilis be placed in a restraining chair.
 {¶ 6} In order to place Mr. Trikilis in the restraining chair, approximately six officers were called to his cell. The cell door was then electronically opened and Mr. Trikilis was ordered to come out of the cell and sit in the chair. Mr. Trikilis did not comply with the officers' orders. Mr. Trikilis ran out of his cell with his head down and charged into Officer Christopher Cavanaugh, knocking him to the ground. Mr. Trikilis then ran around the booking room before being subdued by the remaining officers. Before Mr. Trikilis was subdued, however, Officer David Wright was struck in the face. Officer Wright testified that he was struck by Mr. Trikilis while he was flailing his arms. Officer Wright did not realize the extent of his injuries until the day after the incident, when he *Page 4 
discovered that his eye had nearly swollen shut. Officer Wright then had x-rays taken and it was discovered that a bone in his cheek had been broken during the melee. As a result of his actions at the jail, Mr. Trikilis' March 3, 2004 indictment was amended to add the assault and felonious assault charges.
 {¶ 7} At Mr. Trikilis' requests, all of the charges against him were consolidated into one trial. Accordingly, at trial, Mr. Trikilis faced the following charges: one count of trafficking in drugs, a violation of R.C. 2925.03(A)(1)/(C)(3)(a); one count of trafficking in drugs, a violation of R.C. 2925.03(A)(1)/(C)(3)(d); two counts of trafficking in drugs, a violation of R.C. 2925.03(A)(1)/(C)(2)(c); one count of complicity to commit trafficking in drugs, a violation of R.C.2925.03(A)(1)/(C)(3)(a) and R.C. 2923.03(A)(3); one count of burglary, in violation of R.C. 2911.12(A)(4); one count of intimidation, a violation of R.C. 2921.04(B); one count of telephone harassment, a violation of R.C. 2917.21(A)(5); one count of felonious assault, a violation of R.C. 2903.11(A)(1); and one count of assault, a violation of R.C. 2903.13(A)/(C)(2)(a).
 {¶ 8} Prior to trial, Mr. Trikilis was appointed counsel. During numerous pretrial proceedings, Mr. Trikilis expressed his dissatisfaction with counsel. When asked by the trial court, however, Mr. Trikilis stated that he did not wish to proceed pro se. Despite his statements, the trial court noted in a journal entry that Mr. Trikilis would proceed pro se and that his appointed counsel would act as *Page 5 
standby counsel. As a result, Mr. Trikilis conducted nearly the entire trial acting as his own attorney.
 {¶ 9} During the course of the trial, Mr. Trikilis contested very few of the facts alleged in the indictments against him. Instead, Mr. Trikilis chose to focus his defense on an alleged conspiracy against his family. Mr. Trikilis claimed that Medina County public officials had conspired and continued to conspire against his family to deprive them of liberty and property for more than two decades. In an attempt to support his theory, Mr. Trikilis' standby counsel subpoenaed over forty witnesses, including active judges and attorneys. Our review of the record indicates that Mr. Trikilis' standby counsel exerted an extraordinary effort to assist him in his defense, an effort that was repeatedly thwarted by Mr. Trikilis, against his own interest. In addition, Mr. Trikilis called his father, Michael Trikilis, to testify to expound on the details of the conspiracy. We note that the trial court gave Mr. Trikilis considerable latitude to pursue this theory despite its lack of a factual foundation.
 {¶ 10} As a result of Mr. Trikilis' contesting very few of the facts presented by the State's witnesses, the jury returned guilty verdicts on each count in the indictment. Mr. Trikilis was sentenced to an aggregate prison sentence of nine and one-half years. Mr. Trikilis appealed his convictions to this Court, and we reversed and remanded based on the trial court's failure to inform him of the dangers of self-representation. State v. Trikilis, 9th Dist. No. 04CA0096-M and *Page 6 
04CA0097-M, 2005-Ohio-4266, certiorari denied, 108 Ohio St.3d 1415,2006-Ohio-179.
 {¶ 11} On remand, Mr. Trikilis was found guilty of all of the drug offenses as well as assault in violation of R.C. 2903.13(A). He was acquitted on the remaining charges. Mr. Trikilis was sentenced to an aggregate prison sentence of four and a half years. Mr. Trikilis timely appealed his assault conviction, setting forth three assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE EVIDENCE SUPPORTING DEFENDANT'S CONVICTION FOR ASSAULT AT A JAIL FACILITY (F-5) WAS INSUFFICIENT TO PROVE GUILT BEYOND A REASONABLE DOUBT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND [CRIM.R. 29]; ALTERNATIVELY, THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 12} In his first assignment of error, Mr. Trikilis argues that his conviction of assault was not supported by sufficient evidence and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 13} Mr. Trikilis was convicted of assault in violation of R.C.2903.13(A), (C)(2)(b), which provides, in pertinent part: *Page 7 
"No person shall knowingly cause or attempt to cause physical harm to another[.]
 "* * *
 "Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree.
 "* * *
 "If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:
 "* * *
 "The offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility or a probation department or is on the premises of the facility for business purposes or as a visitor, and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child."
 {¶ 14} R.C. 2901.01(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 15} At Mr. Trikilis' trial, the State called David Wright, a corrections officer ("CO.") for the Medina County Sheriffs Office, as a witness. CO. Wright testified that when he and fellow corrections officers tried to remove Mr. Trikilis from his holding cell, he charged out of the cell and ran into CO. Cavanaugh, knocking CO. Cavanaugh to the floor. After reviewing CO. Wright's testimony, this Court cannot conclude that the jury lost its way in finding Mr. Trikilis guilty of assault. Given CO. Wright's testimony that Mr. Trikilis *Page 8 
charged at CO. Cavanaugh and knocked him to the floor, this Court finds that the jury could infer that CO. Cavanaugh sustained sufficient pain and discomfort from the attack to constitute physical harm. SeeState v. Hill, 2d Dist. No. 20678, 2005-Ohio-3701, at ¶ 34. Mr. Trikilis' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "DEFENDANT'S RIGHT TO CONFRONT WITNESSES UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION [WAS] VIOLATED WHEN THE STATE DID NOT PRESENT THE TESTIMONY OF OFFICER CAVANAUGH, THE ALLEGED VICTIM OF THE ASSAULT, BUT INTRODUCED PREJUDICIAL, TESTIMONIAL HEARSAY OF OFFICER CAVANAUGH."
 {¶ 16} In his second assignment of error, Mr. Trikilis asserts that the trial court admitted hearsay testimony in violation of his constitutional right to confront witnesses against him, as set forth inCrawford v. Washington (2004), 541 U.S. 36. Specifically, Mr. Trikilis argues that the State failed to call CO. Cavanaugh to testify and instead introduced prejudicial hearsay testimony by Sergeant Hastings of the Medina County Sheriff's Office.[1]
 {¶ 17} Recently, the Supreme Court of Ohio discussed the difference between forfeiture and waiver. The Court stated:
 "Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only `[p]lain errors or defects affecting *Page 9 
substantial rights.' Crim.R. 52(B). Inherent in the rule are three limits placed on reviewing courts for correcting plain error.
 "`First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' State v. Barnes (2002), 94 Ohio St.3d 21, 27. Courts are to notice plain error `only to prevent a manifest miscarriage of justice.' State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 "* * *
 "Waiver is the intentional relinquishment or abandonment of a right, and waiver of a right `cannot form the basis of any claimed error under Crim.R. 52(B).' State v. McKee (2001), 91 Ohio St.3d 292, 299, fn. 3 (Cook, J., dissenting); see, also, United States v. Olano (1993), 507 U.S. 725, 733. On the other hand, forfeiture is a failure to preserve an objection, and because Payne failed to timely assert his rights under Blakely, his failure to preserve the objection must be treated as a forfeiture. Id. at 733. `[A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B).' McKee, 91 Ohio St.3d at 299, fn. 3 (Cook, J., dissenting)." State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶¶ 15-16 and 23.
 {¶ 18} Mr. Trikilis failed to object during Sergeant Hastings' testimony at trial, thereby forfeiting his right to raise an argument pursuant to Crawford on appeal. Since Mr. Trikilis forfeited rather than waived the argument, this Court will apply the plain-error analysis to the forfeiture.
 {¶ 19} In Crawford, the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine *Page 10 
him. Id. at 68-69. The Crawford court drew a distinction between testimonial and non-testimonial hearsay and limited its holding to "testimonial" hearsay. See id. at 68. Thus, unless the statements of Sergeant Hastings were "testimonial," Crawford does not impact their admissibility.
 {¶ 20} Although the Crawford Court declined to "spell out a comprehensive definition of `testimonial,'" id., it provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing or other court proceeding, as well as confessions and responses made during police interrogations. See id. at 51-52, 68.
 {¶ 21} In the present matter, although Mr. Trikilis does not specifically point to the testimony he argues was improperly admitted, it appears that Mr. Trikilis is challenging the testimony of Sergeant Hastings. When asked by Mr. Trikilis if he observed Officer Cavanaugh's injury, Hastings replied: "* * * whenever I asked the officers if anyone was hurt or if any uniforms were ripped or anything like that, Cavanaugh related to me that his back was hurting. I told him to see the nurse, and then I took him to the ER." Mr. Trikilis asserts that he had a constitutional right to confront Cavanaugh and that, without an opportunity to cross-examine him, the hearsay statement by Hastings was inadmissible under Crawford. We disagree.
 {¶ 22} Hastings' testimony as to what Officer Cavanaugh told him after the incident with Mr. Trikilis was not testimonial hearsay. It was not testimonial *Page 11 
because it was not a response made during a police interrogation.Crawford, 541 U.S. at 53, fn. 4. Cavanaugh did not knowingly provide testimonial statements in response to structured police questioning; he merely responded to a general query to all officers involved in subduing Mr. Trikilis. This is not the structured police questioning challenged in Crawford. Therefore, Crawford does not bar introduction of this testimony.
 {¶ 23} Hastings' testimony falls outside of the prohibition established by Crawford. Thus, Mr. Trikilis failed to demonstrate plain error. The second assignment of error lacks merit and is overruled.
 ASSIGNMENT OF ERROR III "DEFENDANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE WERE VIOLATED WHEN THE SAME SENTENCING JUDGE, WHO SENTENCED THE DEFENDANT AFTER THE FIRST TRIAL TO 3 CONCURRENT YEARS ON THE DRUG COUNTS, RESENTENCED THE DEFENDANT AFTER THE SECOND TRIAL TO 4 YEARS WHERE THE EVIDENCE IN BOTH TRIALS WAS IDENTICAL AND WHERE THE RECORD DOES NOT JUSTIFY THE INCREASED SENTENCE."
 {¶ 24} In his final assignment of error, Mr. Trikilis argues that the trial court erred on remand by increasing his total sentence on the drug charges when the evidence in the first and second trials was identical. This Court disagrees.
 {¶ 25} At the conclusion of Mr. Trikilis' first trial, he was sentenced to a total prison term of 3 years on the four drug charges under case number 03-CR-267. In doing so, the court ordered that sentences on the four drug counts be *Page 12 
served concurrently to each other. Following the second trial, the court chose to impose the same sentence for each of the four drug counts, but ordered that the one-year sentences for counts 1 and 4 be served concurrently with each other but consecutively to counts 2 and 3 for a total of 4 years on the drug charges for case number 03-CR-267.[2]
 {¶ 26} Mr. Trikilis is arguing that the total time he is to serve is unconstitutional. However, the Supreme Court of Ohio recently held that when resentencing a defendant after the original sentence was reversed, the trial court is to consider each count separately and not look to the aggregate total.
 "Although imposition of concurrent sentences in Ohio may appear to involve a `lump' sentence approach, the opposite is actually true. Instead of considering multiple offenses as a whole and imposing one, overarching sentence to encompass the entirety of the offenses as in the federal sentencing regime, a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense. See R.C. 2929.11 through 2929.19. * * * Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively. See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus, ¶ 100, 102, 105; R.C. 2929.12(A); State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus. Under the Ohio sentencing statutes, the judge lacks the authority to consider the offenses as a group and to impose only an omnibus sentence for the group of *Page 13 
offenses." State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, at
 {¶ 27} This Court notes that Mr. Trikilis' first trial took place prior to the release of the Saxon and Foster decisions. However, his second trial took place after those decisions and the change in the law must be considered. There is no longer a presumption in favor of concurrent sentences in Ohio and the courts must consider each offense separately and impose a separate sentence for each offense before determining whether to run the sentences concurrently or consecutively to each other. In the present matter, the trial court did not exceed its authority by ordering that two of the drug counts be served consecutively although it ordered them to be served concurrently in Mr. Trikilis' first trial. Mr. Trikilis' third assignment of error is overruled.
 III. {¶ 28} Mr. Trikilis' assignments of error are overruled. The decision of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into *Page 14 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
MOORE, P. J. DICKINSON, J. CONCUR
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] This Court notes that at the time of trial, Mr. Hastings was retired. However, at the time the incident giving rise to this appeal occurred, his rank was sergeant.
[2] Mr. Trikilis was also sentenced to a term of 6 months consecutive to the 4 years in case number 03-CR-267, which conviction Mr. Trikilis challenged in his first assignment of error. *Page 1