The STATE of Ohio, Appellee,

v.

POWERS, Appellant.

[Cite as *State v. Powers* (1995), 106 Ohio App.3d 696.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17238.

Decided Oct. 4, 1995.

*Maureen O'Connor*, Summit County Prosecuting Attorney, and *William Wellemeyer*, Assistant Prosecuting Attorney, for appellee.

*Donald L. Walker*, for appellant.

BAIRD, Presiding Judge.

Defendant-appellant Anthony K. Powers appeals from his convictions rendered in the Summit County Court of Common Pleas. On March 24, 1995, a jury found appellant guilty of one count of aggravated robbery with a prior aggravated felony specification, in violation of R.C. 2911.01(A)(1), and one count of grand theft with a prior violent offense specification, in violation of R.C. 2913.02(A)(1). Appellant now challenges his convictions on the principal charges. We affirm appellant's convictions.

The charges stemmed from an incident which occurred on August 22, 1994. Sharon Cozzoli, co-owner of "Helium Hi's," a flower shop located in Akron, testified that at approximately 5:30 p.m. on that date she was alone in her store preparing to close the business for the day. According to Cozzoli, appellant

entered the store, claiming to be in trouble with his girlfriend and to be seeking to purchase flowers and a stuffed animal to be delivered. Cozzoli further testified that appellant then donned a gray ski mask and pulled out an object which Cozzoli believed to be a gun. Appellant then forced Cozzoli to give him approximately $56 from the store's cash register, whereupon appellant led Cozzoli to the back of the store and forced her to lie down on the ground. Appellant reportedly placed his weapon against Cozzoli's forehead and then against her back, threatening that if Cozzoli moved or attempted to summon police he would "blow your head off, bitch." Appellant then left the store, whereupon Cozzoli got up and phoned police.

Police responded and conducted an examination of the crime scene, including obtaining fingerprints from various surfaces. Cozzoli gave a physical description of her assailant, as well as telling police he had worn a green hospital scrub shirt and cutoff jean shorts. At approximately 11:00 that night, Officer Daniel Hudnall, one of the officers who had responded to Cozzoli's call, left the Akron police department with his partner, Officer Morrison. As the officers walked down Buchtel Avenue, they encountered appellant, who matched Cozzoli's description and was wearing a green hospital scrub shirt and cutoff jean shorts. As the officers approached, they observed appellant drop what appeared to be a gun onto the sidewalk. Appellant was arrested and searched, and a gray ski mask was discovered on his person.

Cozzoli was later shown an array of six photographs, and identified appellant as her assailant. She also identified him at trial. Appellant, in his testimony at trial, claimed that he had never been in Helium Hi's, and that at the time the incident occurred he was elsewhere looking for work. He asserted that just prior to his encounter with Officers Hudnall and Morrison, he had discovered the shirt and shorts in a trash barrel and put them on. He presented no witnesses other than himself. Two fingerprints that police had found at Helium Hi's were identified as appellant's. Evidence was presented that the object which Cozzoli had believed to be a gun and which Officer Hudnall had seen appellant drop onto the sidewalk was in fact a wrench and a brush wrapped together with two black socks. The wrench weighed between three and five pounds. Appellant was convicted. He now appeals, advancing four assignments of error. We consider these in logical order.

## III

"Upon giving the jury the *Howard* instruction with respect to a deadlocked jury, the trial court erred by failing to give the modifying instruction reminding the jury of its right to be deadlocked."

■ On March 23, 1995, after one day of deliberation, the jury sent a message to the judge indicating that they had "reache[d] an impasse and believe[d] there w[ould] be no change in the decision of each individual." At that time, the trial judge recalled the jury and read them a supplemental instruction as provided by 4 Ohio Jury Instructions (1981), Section 415.50(2), and *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, certiorari denied (1989), 493 U.S. 873, 110 S.Ct. 203, 107 L.Ed.2d 157. Appellant does not find fault with this instruction. However, he asserts that the court should have provided an additional instruction, specifically the modifying instruction set forth in Section 415.50(3).

■ To preserve for appeal the issue of error in the instruction to the jury, an appellant must cite an objection to the instruction on the trial record. *Kelley v. Cairns & Brothers, Inc.* (1993), 89 Ohio App.3d 598, 613, 626 N.E.2d 986, 995–996. In this case, no such objection appears anywhere in the record. A fundamental rule of appellate review is that a reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317–318, 436 N.E.2d 1001, 1003–1004. Thus, a party has waived the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below. See *State v. Self* (1990), 56 Ohio St.3d 73, 81, 564 N.E.2d 446, 454. Appellant failed to raise this issue in the trial court. Therefore, we overrule his third assignment of error.

I

"The trial court erred in denying the appellant's motion for a new trial, which was based on the fact that the jury observed him in shackles in the courtroom during the deliberations."

II

"The trial court erred by failing to voir dire the jury as to viewing the appellant in restraints; and further erred by failing to give a curative or corrective instruction to the jury regarding the incident."

■ We address appellant's first two assignments of error together, as both are related to the same incident. Appellant was incarcerated throughout his trial but was allowed to appear in civilian clothes when the jury was present. However, when the trial court delivered the supplemental jury charge, appellant was brought over from the Summit County Jail. While jurors were being brought into the courtroom, the deputies escorting appellant in the hallway outside the courtroom apparently failed to conceal him from their view. Appel-

lant was at that time shackled and handcuffed, and at least two of the jurors admitted to having observed him in this condition.

After the jurors were read the supplemental charge and returned to their deliberations, appellant moved for a mistrial. This motion was overruled by the trial court. After the jury rendered its verdict, the court, at appellant's request, detained two jurors for the purpose of questioning them about this incident. The record indicates that it was only these two jurors whom appellant wished to question:

"THE COURT: Mrs. MacDonald, wait one minute. You wanted to talk to two jurors. * * * Mrs. MacDonald, you made a motion for a new trial during the course of the deliberations because of something one or the other jurors said to each other here in this courtroom, not in the jury room. You made a motion for a new trial which I overruled, but I will now allow some testimony for the record as to what it was. * * * Now you have pointed out jurors Number 4 and 5, which I have reserved in the courtroom, Mr. Cunningham and Mrs. Manzo. Is that right?

"MRS. MACDONALD [Appellant's attorney]: Yes, at this time I would ask to renew my motion for mistrial. * * * Two of the jurors, I looked over, and two of the jurors were looking at him. One of them, and I believe was you [Mrs. Manzo], uttered an exclamation which I would say just like, kind of a shock thing, and what I thought you said, if I'm correct, was, 'Oh, my God, he is in chains.'
" * * * *

"MRS. MANZO: I did view him, but I never, ever said anything about chains."

Both jurors were placed under oath and testified that they never remarked on appellant's restraints and that their view of appellant played no role in their decision. The court then dismissed the jurors. Appellant now contends that it was error to deny his motion for mistrial.

■ An appellate court will not reverse a decision on a motion for mistrial unless that decision constitutes an abuse of discretion. *Cleveland v. Walters* (1994), 98 Ohio App.3d 165, 168, 648 N.E.2d 37, 38–39; *State v. Widner* (1981), 68 Ohio St.2d 188, 190, 22 O.O.3d 430, 431, 429 N.E.2d 1065, 1066–1067. Ohio courts have held that "the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent, and outside of the courtroom." *State v. Kidder* (1987), 32 Ohio St.3d 279, 286, 513 N.E.2d 311, 318. Moreover, the jury was already aware that appellant had been incarcerated for armed robbery once before, since he had testified to that effect.

"Once the jury was legitimately informed of [appellant's] criminal past, and particularly the fact that he had already been convicted of the same violent crime

for which he was presently on trial, the possibility of any prejudice inuring to him as a result of a brief viewing in shackles * * * became extremely remote." *State v. Chitwood* (1992), 83 Ohio App.3d 443, 449, 615 N.E.2d 257, 261.

Appellant now contends that he was prejudiced when the trial court did not voir dire the other members of the panel and did not provide any curative instruction to the jury. However, the record indicates that the court examined, and allowed appellant to examine, those jurors who appellant's attorney requested be detained; apparently, appellant did not ask that the entire panel be examined. Moreover, appellant at no time requested any kind of curative instruction, nor do the responses of the jurors indicate that any would have been necessary, since both testified under oath that their brief glimpse of appellant did not affect their decision. It is neither likely nor apparent from the record, therefore, that appellant suffered any prejudice whatsoever from this encounter. We can find no abuse of discretion on the part of the trial court, and, therefore, overrule appellant's first two assignments of error.

## IV

"The state failed to prove beyond a reasonable doubt, all elements of the offense of aggravated robbery, in that the object allegedly used, cannot, as a matter of law, be a deadly weapon or dangerous ordnance as defined in Ohio Revised Code Section 2923.11."

Appellant next contends that since the item he had disguised as a gun was not, in fact, a gun, his conviction for aggravated robbery lacks a necessary element. Appellant was convicted of aggravated robbery in violation of R.C. 2911.01, which makes it a crime to commit a theft offense while having a deadly weapon under his control. Specifically, appellant argues that his "weapon" was insufficient to meet the statutory requirement of a "deadly weapon."

R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Appellant contends that his weapon, the wrench-and-brush combination disguised with a pair of black socks, does not satisfy the above definition. We disagree.

The item apparently looked enough like a real gun to cause both Cozzoli and Officer Hudnall to mistake it for a gun. However, it is not the subjective perception of others which determines whether the statutory elements are satisfied. We base our decision on our interpretation of the statutory requirements in R.C. 2923.11(A) and its definition of a "deadly weapon."

The statute requires two things. First, the object in question must be capable of inflicting death. The statute further requires that the item be designed,

adapted, carried, or used as a weapon. Appellant does not contest the fact that a three to five-pound metal wrench is fully capable of causing death if employed in a certain manner, particularly if used as a bludgeon. However, he does contend that, since the wrench was incapable of being used as a firearm and was never threatened or used as a bludgeon, the second of the statutory elements is not present.

 The statute does not, however, require any identity between the two elements. Simply put, an item carried or adapted for use as one type of weapon is still a deadly weapon, even though it is not capable of being the kind of weapon it is disguised as. The statute does not require that an object be used in its most lethal capacity in order to qualify as a weapon. The wrench is an object which, if used in one manner, is capable of causing death; that it was not used by appellant in this particular manner is immaterial. Appellant carried the wrench as a weapon, for the purpose of committing a crime. The fact that he carried it disguised as a different sort of weapon does not alter this fact. See *State v. Hicks* (1984), 14 Ohio App.3d 25, 26, 14 OBR 29, 30, 469 N.E.2d 992, 993.

We therefore overrule appellant's fourth assignment of error, and affirm the judgment rendered in the trial court.

*Judgment affirmed.*

REECE and DICKINSON, JJ., concur.