The STATE OF OHIO, Appellee,

v.

McELRATH, Appellant.

[Cite as *State v. McElrath* (1996), 114 Ohio App.3d 516.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17645.

Decided Oct. 2, 1996.

*Maureen O'Connor*, Summit County Prosecuting Attorney, and *William D. Wellemeyer*, Assistant Prosecuting Attorney, for appellee.

*Donald Walker*, for appellant.

REECE, Judge.

Appellant, Darion McElrath, appeals from his conviction of complicity to commit aggravated robbery with a firearm specification. We affirm.

On the night of July 29, 1995, three masked men dressed in dark, hooded sweat clothes rushed into Taco's Avenue Cafe in Akron. The first man jumped across the bar and took money from the cash register while the second man held a shotgun on the bartender and the customers. The third man stood lookout at the door. The robbery was over in a matter of minutes, and the three men fled the bar. McElrath and another suspect were arrested shortly thereafter.

McElrath was originally tried in November 1995, but the jury was unable to reach a verdict, and a mistrial was declared. He was retried thirty-one days later. Following his second trial, McElrath was found guilty of aggravated robbery and complicity to commit aggravated robbery, each with a firearm specification, and grand theft with a prior theft offense specification. The

aggravated robbery and grand theft counts were merged with the complicity count, and McElrath was convicted accordingly.

McElrath appeals and raises four assignments of error.

The first assignment of error is that the trial court violated McElrath's right to a speedy trial. R.C. 2945.71(C)(2) provides that a defendant facing a felony charge must be brought to trial "within two hundred seventy days after his arrest." Pursuant to the triple-count provision, each day the accused is incarcerated in lieu of bail counts as three days for speedy trial purposes. R.C. 2945.71(E).

McElrath does not dispute that he waived his right to a speedy trial prior to his first trial. He contends, however, that this waiver did not extend to his reindictment and retrial. Whether his prior waiver was still in effect is irrelevant because, at that point, McElrath no longer had a statutory right to a speedy trial. The speedy trial protections of R.C. 2945.71 pertain only to the original trial and have no application to a retrial following a mistrial because of a hung jury. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20–21, 1 OBR 57, 58, 437 N.E.2d 583, 585. The standard to be applied in this situation is one of reasonableness under the United States and Ohio Constitutions. *Id.* at 21, 1 OBR at 58, 437 N.E.2d at 585.

McElrath was retried thirty-one days after the trial court declared the mistrial. For at least fourteen of the thirty-one days, the trial court proceedings were stayed because McElrath had prematurely appealed the speedy trial issue. He dismissed his appeal shortly thereafter. Given that the delay between the first and second trial was only thirty-one days and that nearly half of this period was necessitated by McElrath's own action, McElrath has failed to convince us that he was not tried within a reasonable period of time. The first assignment of error is overruled.

As his second assignment of error, McElrath contends that his three-year sentence on the firearm specification must be reversed because the state failed to prove that the crime was committed with a firearm. McElrath's third assignment of error is closely related to his second. McElrath argues that, because there was no proof that he used a firearm, he could not be convicted of armed robbery pursuant to R.C. 2911.01(A)(1). Both assignments of error hinge on whether the state presented sufficient evidence that the alleged shotgun used during the robbery was in fact a firearm.

When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine the evidence admitted at trial, in a light most favorable to the prosecution, and determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

"Firearm" is defined in R.C. 2923.11(B) as:

"(1) * * * any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable.

"(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." See, also, *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus.

We evaluate the evidence of a firearm's operability by examining the totality of the circumstances. *Murphy, supra,* at 208, 551 N.E.2d at 934–935. In cases such as this where no shots were fired and the firearm was never recovered, circumstantial evidence such as the "representations and actions of the individual exercising control over the firearm" are of crucial importance. The Ohio Supreme Court has found sufficient circumstantial evidence of operability where the defendant brandishes the firearm, points it at his victims, who later describe the firearm, and threatens to kill them. *Id.*

In *State v. Nelson* (Aug. 18, 1995), Montgomery App. No. 14775, unreported, 1995 WL 491084, the Second District Court of Appeals explained that it had previously determined that implicit threats were insufficient to establish operability. See *State v. Dixon* (Nov. 1, 1993), Greene App. No. 93–CA–18, unreported, 1993 WL 452012. The court in *Dixon* had certified the following question to the Ohio Supreme Court:

"Where a defendant brandishes a gun and implicitly but not expressly threatens to use the gun as a gun, are those implicit threats sufficient to establish the operability of the gun so that the defendant can be found guilty of a firearm specification?"

The Ohio Supreme Court, in *State v. Dixon* (1995), 71 Ohio St.3d 608, 609, 646 N.E.2d 453, had answered as follows:

"The judgment of the court of appeals is reversed as to the certified issue only, and the judgment of the trial court is reinstated on the authority of *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932."

Therefore, in *Nelson, supra,* the Second District Court of Appeals concluded, upon the authority of *Dixon, supra,* that the implicit threat of brandishing a

firearm and pointing it at an intended victim supports an inference that the firearm was operable. At least one other appellate court has likewise interpreted *Dixon* to expand the *Murphy* operability criteria to include brandishing the firearm so as to threaten the victim. *State v. Gest* (1995), 108 Ohio App.3d 248, 670 N.E.2d 536; but, see *State v. Thompkins* (Nov. 22, 1995), Hamilton App. No. C–940513, unreported, 1995 WL 688789, (refusing to follow *Nelson* absent further guidance from the Supreme Court).

With this additional consideration in mind, we now examine the totality of the circumstances during the robbery at Taco's Avenue Cafe. Three masked men rushed into Taco's, one of them wielding a shotgun. The gunman pointed the shotgun directly at the customers and bartender while another man took cash from the register. According to the bartender, the implicit threat of the shotgun "petrified" her. "I thought I was going to die." She described the firearm as a sawed-off shotgun because the barrel was "very round" and the opening was "bigger than a quarter."

The owner of the bar, who was also present during the robbery, corroborated the bartender's testimony. He further testified that a piece of the stock of the gun fell off during the robbery. This piece of metal was admitted into evidence. One of the investigating police officers testified that this piece of shotgun stock had been sawed off into a pistol grip. He explained that shotguns are sawed off to make them shorter for purposes of appearance and concealment.

This evidence, taken as a whole, was sufficient to convince the average mind that the robbery was committed with an operable firearm. McElrath's second and third assignments of error are overruled.

McElrath's fourth assignment of error is that the trial court violated several of his constitutional rights by allowing the state to use its peremptory challenges to exclude African Americans from the venire. The state exercised five peremptory challenges in this case, three of which were used to exclude African–American jurors. McElrath raised an objection under *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, to the exclusion of each of these jurors.

Traditionally, peremptory challenges have enabled parties to remove from the venire any person they believed would be more likely to find for the opponent, regardless of their reasons for thinking so. In *Batson*, the United States Supreme Court recognized an exception to this general rule. *Batson* established that the state may not use peremptory challenges against veniremen solely on the basis of their race.

In analyzing the merits of a *Batson* challenge, a court follows the three-part test. "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the

requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." (Citations omitted.) *Hernandez v. New York* (1991), 500 U.S. 352, 358–359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 405.

The state's first peremptory challenge was used to exclude a Caucasian from the venire. The second challenge was used to exclude an African American. McElrath raised a *Batson* objection to this peremptory challenge, and demanded a race-neutral explanation for the exclusion of this juror. The prosecutor did not give a race-neutral explanation, because he believed that McElrath had failed to establish a prima facie showing that the juror had been excluded because of his race. The trial court overruled McElrath's objection, apparently agreeing that he had failed to establish a prima facie case of discrimination.

To make a prima facie case of such purposeful discrimination, a defendant must demonstrate (a) that members of a recognized racial group were peremptorily challenged and (b) that the " 'facts and any other relevant circumstances raise an inference that the prosecutor' " used the peremptory challenges to exclude jurors " 'on account of their race.' " *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, quoting *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88.

McElrath points to no surrounding circumstances, but relies solely on the peremptory challenge itself. The mere fact that the state exercised its second peremptory challenge to exclude an African American does not, in and of itself, raise an inference that the state used the challenge to impermissibly exclude an African-American juror. Therefore, McElrath failed to establish a prima facie case of purposeful discrimination.

The state's third and fifth peremptory challenges excluded two more African Americans, Ms. Barker and Ms. Long. Following each of McElrath's objections, the state offered an explanation for the exclusion of the juror in question. McElrath contends that the state's explanations were not race-neutral.

The race-neutral explanation offered by the state need not rise to the level of a challenge for cause. It need not be compelling, nor need it be "persuasive, or even plausible. 'At this * * * step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Purkett v. Elem* (1995), 514 U.S. 765, 766, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839–40, quoting *Hernandez v. New York, supra,* 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d at 406.

The state explained that its reason for excluding Barker was that her son had been convicted of drug trafficking. The state's explanation for excluding Long was based on her prior experience with the Summit County Child Support Enforcement Agency:

"When I asked her whether or not she was satisfied with her service there, she had a long pause and she had a very disgruntled look on her face, and as a result, because it is one of the divisions of the prosecutor's office, Your Honor, the State would indicate that's the reason, race-neutral reason."

We find no racially discriminatory intent inherent in either of the state's explanations. Each reason demonstrates a concern by the state that the person may have had a negative experience with the prosecutor's office, and might therefore have a bias against the prosecution. The explanations for the exclusion of these jurors were therefore race neutral.

The trial court overruled each of McElrath's *Batson* objections, apparently concluding that the state did not exercise its peremptory challenges with a racially discriminatory intent. The trial court's finding on this third prong of the test "largely * * * turn[s] on evaluation of credibility." *Batson, supra,* 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, fn. 21. Consequently, the trial court's determination must be granted great deference, and will not be disturbed on appeal absent a demonstration that it is clearly erroneous. *Hernandez v. New York, supra,* 500 U.S. at 364–365, 111 S.Ct. at 1868–1869, 114 L.Ed.2d at 409. McElrath has failed to convince us that the trial court's determination was clearly erroneous. The fourth assignment of error is overruled.

*Judgment affirmed.*

SLABY, J., concurs.

BAIRD, P.J., concurs separately.

BAIRD, Presiding Judge, concurring.

Though I agree with the majority's reasoning as to the weapon's characteristics as a firearm, I write separately only to make the point that the resolution of the third assignment of error is not dependent on that analysis. As to the aggravated robbery charge, the item carried need not necessarily be a firearm, but could be a deadly weapon. See *State v. Powers* (1995), 106 Ohio App.3d 696, 667 N.E.2d 32.