[Cite as *State v. Bloodworth*, 2013-Ohio-248.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26346 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| PHILLIP J. BLOODWORTH | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 12 3424 (A) |

DECISION AND JOURNAL ENTRY

Dated: January 30, 2013

---

BROGAN, Judge.

## INTRODUCTION

{¶1} The Grand Jury indicted Phillip Bloodworth on two counts of aggravated robbery and two counts of having weapons while under disability along with two firearm specifications. Before trial, Mr. Bloodworth waived his right to counsel. A jury found him guilty of the offenses and specifications, and the trial court sentenced him to 20 years in prison. Mr. Bloodworth has appealed, assigning as error that the court incorrectly refused to appoint standby counsel, failed to inquire into his mental competency, and failed to properly advise him of the dangers of proceedings pro se. He has also assigned as error that the evidence was not sufficient to support his convictions for having weapons under disability or for the firearm specifications. We affirm because the trial court was not required to appoint standby counsel, it did not have reason to question Mr. Bloodworth's competence, it correctly accepted his waiver of counsel, and there was sufficient evidence to support Mr. Bloodworth's convictions.

STANDBY COUNSEL

{¶2} Mr. Bloodworth's first assignment of error is that the trial court incorrectly refused to appoint standby counsel after he exercised his right to proceed pro se. We note that in the trial court, Mr. Bloodworth did not indicate any interest in having standby counsel appointed when the possibility of having standby counsel was briefly discussed. Instead, he told the court: "I don't need a standby attorney." According to Mr. Bloodworth, in *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, the Ohio Supreme Court "recognized the right of a defendant that has elected to proceed pro se with the assistance of standby counsel." *See id*. at paragraph one of the syllabus. The first paragraph of the syllabus in *Martin* was that "[i]n Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se [with] the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." In *Martin*, the Grand Jury indicted Kyle Martin for several felonies. When Mr. Martin's lawyer withdrew, Mr. Martin moved to represent himself with the assistance of counsel. Following several hearings, the trial court decided to allow Mr. Martin to proceed pro se, but appointed a lawyer to sit with him during the trial in case he needed advice. A jury convicted Mr. Martin of kidnapping, but the Eighth District Court of Appeals reversed, concluding that the trial court had not adequately advised him about the perils of self-representation. *Martin*, 2004-Ohio-5471 at ¶ 20. The State appealed its decision to the Ohio Supreme Court.

{¶3} The Supreme Court noted that a defendant has a constitutional right to counsel and a constitutional right to defend himself. *Martin*, 2004-Ohio-5471 at ¶ 24. It explained that, after a defendant waives his right to counsel, "trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant." *Id*. at ¶ 28. It held, however, that there is no

constitutional right to hybrid representation. *Id*. at ¶ 32. Regarding the facts of the case, the Court determined that the trial court had not adequately warned Mr. Martin about the risks of self-representation before requiring him to conduct most of his defense without an attorney. *Id*. at ¶ 37. It, therefore, upheld the Eighth District's decision to remand the case for a new trial. *Id*. at ¶ 45.

{¶4} Although the Ohio Supreme Court wrote in *Martin* that "a criminal defendant has the right . . . to proceed pro se with the assistance of standby counsel[,]" its statement must be read in context. *Martin*, 2004-Ohio-5471 at ¶ 32. Theoretically, a criminal defendant can proceed at trial four ways: with counsel, without counsel, without counsel but with a standby attorney, or hybrid representation. In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court explained that, if a defendant elects to proceed without counsel, "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id*. at 834 n.46. In *McKaskle v. Wiggins*, 465 U.S. 168 (1984), it held that a defendant's right to self-representation is not infringed just because standby counsel provides unsolicited advice during the trial. *Id*. at 176-77. From those cases we can discern that, although a defendant has a right to represent himself, a court may still require standby counsel. Accordingly, when the Ohio Supreme Court wrote in *Martin* that a defendant has the right "to proceed pro se with the assistance of standby counsel," it was acknowledging in part that a defendant does not have a truly unconditional right to appear by himself at trial. Although in its syllabus it stated that a defendant does have the right to self-representation with the assistance of standby counsel, the Court was not declaring that a trial court must appoint standby counsel whenever the defendant waives his right to counsel.

{¶5}  In this case Mr. Bloodworth did not request or express any interest in having standby counsel.  Instead, he suggests that the appointment of standby counsel was mandatory.  Applying Mr. Bloodworth's interpretation of *Martin*, however, would make the Supreme Court's opinion internally inconsistent.  In paragraph 28, the Court wrote that "[o]nce the right to counsel is properly waived, trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant."  *Martin*, 2004-Ohio-5471 at ¶ 28.  If a court is required to appoint standby counsel whenever a defendant waives his right to counsel, it would make no sense for the Court to write that a trial court is "permitted" to appoint standby counsel in such instances.  *Id*.  We, therefore, agree with the Second and Eighth Districts that "a pro se defendant does not enjoy an absolute right to standby counsel."  *State v. Gatewood*, 2d Dist. No. 2008 CA 64, 2009-Ohio-5610, ¶ 46; *State v. Washington*, 8th Dist. Nos. 96565, 96568, 2012-Ohio-1531, ¶ 9-10.  Mr. Bloodworth's first assignment of error is overruled.

MENTAL COMPETENCE

{¶6}  Mr. Bloodworth's second assignment of error is that the trial court failed to hold a hearing regarding whether he was competent to stand trial.  He has noted that he told the court that he suffered from mental illness and was taking "various powerful and potentially mind-altering drugs."  He has also argued that he displayed confusion during the proceedings, which should have caused the court to examine his competence to stand trial.  The Ohio Supreme Court has held that "[a]n evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial." *State v. Were*, 94 Ohio St.3d 173, paragraph two of the syllabus (2002).

{¶7}  At a hearing on Mr. Bloodworth's request to proceed without counsel, Mr. Bloodworth disclosed that he was in a mental health unit at the jail because he had been

diagnosed as having a bipolar disorder and attention-deficit hyperactivity disorder. Mr. Bloodworth told the court that he was taking an anti-depressant, an anti-psychotic, and a mood stabilizer in order to control the conditions. When the court asked Mr. Bloodworth whether he would be able to represent himself given his biochemical problems, Mr. Bloodworth responded "[a]bsolutely, without question."

{¶8} According to Mr. Bloodworth, the lawyer who the court initially appointed to represent him was the same lawyer who had represented him in a prior case. We note that she did not express any concerns about Mr. Bloodworth's competence to stand trial before moving to withdraw at Mr. Bloodworth's request, even though she would have been familiar with Mr. Bloodworth from her prior representation of him.

{¶9} Mr. Bloodworth has argued that the record demonstrates that he was affected by his mental disorders during the proceedings. He notes that on separate occasions he asked the trial court to identify the prosecutor, asked if the wrong individual was the prosecutor, and asked if the prosecutor was present in the courtroom when he clearly was not. Mr. Bloodworth has argued that the capacity to identify the prosecutor is a basic task necessary to present a defense. He has argued that his inability to recognize the prosecutor was indicative of his lack of competence and was a significant obstacle to presenting his own defense.

{¶10} At one of Mr. Bloodworth's pretrial hearings, he asked about the identity of the prosecutor. The exchange reveals that Mr. Bloodworth was not confused about the individual's role in the proceeding, but was merely attempting to learn the prosecutor's name. A month later, Mr. Bloodworth asked at the beginning of another pretrial hearing whether a particular individual was the prosecutor. Several different prosecutors had represented the State at previous hearings, so it is not surprising that Mr. Bloodworth made an effort to identify who the prosecutor was at

that hearing. It turns out that the prosecutor was not in the courtroom at the time. Although the fact that it did not occur to Mr. Bloodworth that the prosecutor might be late for a hearing and that the court would start a hearing without the prosecutor present suggests that Mr. Bloodworth may have had some unfamiliarity with the court system, it does not indicate that he was not competent to stand trial. Upon review of the record, we conclude that it does not contain indicia of incompetency that called into doubt Mr. Bloodworth's competence to stand trial. The trial court, therefore, did not err when it failed to hold a competency hearing. Mr. Bloodworth's second assignment of error is overruled.

## WAIVER OF COUNSEL

{¶11} Mr. Bloodworth's third assignment of error is that his waiver of his right to counsel was not knowing, intelligent, and voluntary because the trial court failed to properly advise him of the dangers of proceeding pro se. Under Rule 44(A) of the Ohio Rules of Criminal Procedure, if a defendant who is charged with a serious offense is unable to obtain counsel, the court shall assign him a lawyer "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, paragraph two of the syllabus (1976). "In verifying that a waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court must make a sufficient inquiry to determine whether the defendant was advised of the dangers and disadvantages of self-representation." *State v. Hunter*, 9th Dist. No. 10CA009903, 2012-Ohio-1121, ¶ 14; *see Faretta v. California*, 422 U.S. 806, 835 (1975) ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to

choose self-representation, he should be made aware of the dangers and disadvantages of self-representation . . . .").  This is because, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835.

{¶12}  In determining whether the defendant intelligently relinquished his right to counsel, this Court reviews the totality of the circumstances.  *State v. Holmes*, 9th Dist. No. 25847, 2012-Ohio-565, ¶ 7.  "While no one factor is dispositive, the trial court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances."  *State v. Trikilis*, 9th Dist. Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 13.  The trial court, however, does not need to "undertake pseudo-legal representation of a defendant by specifically advising him of possible viable defenses or mitigating circumstances," and, instead "a broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient."  *State v. Ragle*, 9th Dist. No. 22137, 2005–Ohio–590, ¶ 12; *Trikilis*, 2005-Ohio-4266 at ¶ 13.  "A court may also consider various other factors, including the defendant's age, education, and legal experience."  *Trikilis*, 2005-Ohio-4266 at ¶ 13.

{¶13}  Mr. Bloodworth has argued that the trial court "failed to properly advise him of the nature of the Felonious Assault charges against him . . . ."  Mr. Bloodworth, however, was not indicted for felonious assault.  He has also argued that the court failed to review the elements of aggravated robbery with him, but a court does not have to tell a defendant the elements of a crime to adequately advise him of the nature of charges.  *State v. McGraw*, 8th Dist. No. 96606, 2012-Ohio-3247, ¶ 10 (citing *State v. Swift*, 86 Ohio App.3d 407 (11th Dist. 1993)).  In this case,

the court asked Mr. Bloodworth to "[t]ell me about the charges against you now. Not the facts, tell me about the charges." Mr. Bloodworth replied: "I'm charged now with two counts of aggravated robbery[.]" The court next asked him whether he knew what the potential penalties were for aggravated robbery. Mr. Bloodworth responded: "Three to ten years." Although the court corrected Mr. Bloodworth by informing him that the penalty had been changed to "three to eleven" years, the exchange demonstrates that Mr. Bloodworth was well-informed about the nature of the aggravated robbery charges.

{¶14} Mr. Bloodworth has also argued that the trial court failed to advise him about possible defenses. Before accepting his written waiver of his right to counsel, the court advised Mr. Bloodworth that, although he did not know the facts of the case, some of the possible defenses to the charges were that it was not him, that he was not present, that he did not have a car, or that he did not have a firearm. The court, therefore, correctly engaged in the "broader discussion of defenses and mitigating circumstances" that are applicable to a charge of aggravated robbery. *Trikilis*, 2005-Ohio-4266 at ¶ 13.

{¶15} It appears from the trial court's exchange with Mr. Bloodworth that Mr. Bloodworth had a good sense of the charges and penalties he faced as well as some of the defenses he could assert. Mr. Bloodworth also had experience representing himself in three other criminal cases. Upon consideration of the totality of the circumstances, we conclude that Mr. Bloodworth knowingly, intelligently, and voluntarily waived his right to counsel. His third assignment of error is overruled.

SUFFICIENT EVIDENCE

{¶16} Mr. Bloodworth's fourth assignment of error is that the evidence was insufficient to support his convictions for having weapons under disability and for the firearm specifications.

Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Bloodworth's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991).

{¶17} In order to unlawfully have weapons under disability under Section 2923.13(A) of the Ohio Revised Code, a person who is under disability must "knowingly acquire, have, carry, or use any firearm or dangerous ordnance[.]" Similarly, in order to be sentenced on a firearm specification, the offender must have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.14.5(A). Under Section 2923.11(B)(1), "'[f]irearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." The definition "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).

{¶18} Mr. Bloodworth has argued that the State failed to prove beyond a reasonable doubt that he possessed a firearm during the robberies. He has noted that the police did not recover any guns during their investigation. He has also noted that there was no evidence of any gunshots, bullets, or bullet holes that would have indicated that the alleged gun was operable. He has also argued that the witnesses' testimony does not establish that he had a gun or, even if he did, that the gun was operable.

{¶19} Tiffany Rodhe testified that she was taking a break behind the sandwich shop where she worked when Mr. Bloodworth approached and tried to grab her. She said that Mr. Bloodworth had an object in his hand that she was "almost 100 percent positive . . . was a gun" because it was black, metallic, and shone in the light. Ms. Rodhe's coworker, Ryan Young, testified that, after Ms. Rodhe ran into the shop, he went to the back door to investigate. He said that Mr. Bloodworth punched him and knocked him to the ground then pressed something "cold and round" against the back of his neck. Mr. Bloodworth dragged him to the registers and told the others to "just give me the money and I will not shoot him. Just give me the money and I will not shoot him." The manager of the store also testified that he saw Mr. Bloodworth put something to the back of Mr. Young's head and that it "looked like some sort of gun-shaped object." We conclude that the witnesses' observations along with Mr. Bloodworth's statements were sufficient circumstantial evidence for the jury to find that Mr. Bloodworth possessed a firearm during the robbery of the sandwich shop.

{¶20} A couple of days after the sandwich-shop robbery, Mr. Bloodworth attempted to rob a credit union. According to the manager of the credit union, Mr. Bloodworth and another man entered it shortly after it opened "with guns[.]" She said that when one of her coworkers saw the guns, the coworker put her hands up in the air, which is not how the coworker normally walks around. The State also submitted a surveillance video from the robbery which clearly depicts one of the robbers pointing and aiming a gun. We, therefore, conclude that there was sufficient evidence that Mr. Bloodworth had a firearm during the robbery of the credit union.

{¶21} Regarding whether the guns were operable, we "evaluate the evidence of a firearm's operability by examining the totality of the circumstances." *State v. Ware*, 9th Dist. No. 22919, 2006-Ohio-2693, ¶ 13 (quoting *State v. McElrath*, 114 Ohio App.3d 516, 519

(1996)). We note that Section 2923.11(B)(2) provides that, "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

{¶22} During the sandwich shop robbery, Mr. Bloodworth told the employees that, if they gave him the shop's money, he would not shoot Mr. Young. Mr. Bloodworth's statement implied that his gun was operable. During the credit-union robbery, one of the robbers raised his gun and pointed it as if he was about to fire it. This Court has "a long precedent of finding operability sufficiently established, even though a weapon is not recovered, when one brandishes a gun in a threatening manner and the victim testifies to the threat and describes the gun." *Ware*, 2006-Ohio-2693, at ¶ 13. Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence is sufficient to convince an average fact finder beyond a reasonable doubt that Mr. Bloodworth possessed a weapon while under disability and that he used an operable gun in the commission of the two aggravated robberies. His fourth assignment of error is overruled.

## CONCLUSION

{¶23} The trial court was not required to appoint Mr. Bloodworth standby counsel, it did not err when it failed to hold a competency hearing, the court correctly accepted Mr. Bloodworth's waiver of counsel, and there was sufficient evidence to support his convictions. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JAMES BROGAN
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

(Brogan, J., retired, of the Second District Court of Appeals, sitting by assignment pursuant to §6(C), Article IV, Constitution.)

APPEARANCES:

NICHOLAS J. HORRIGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.