[Cite as *State v. Humphries*, 2014-Ohio-1230.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99924

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAVID L. HUMPHRIES

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-566544-C

**BEFORE:** Kilbane, J., Rocco, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 27, 2014

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Edward D. Brydle
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, David Humphries, appeals from his convictions for kidnapping, aggravated robbery, having a weapon while under disability, and firearm specifications.   He assigns the following errors for our review:

I.      The convictions for the firearm specifications were against the manifest weight of the evidence, and not supported by sufficient evidence, because the state did not prove that the firearm was operable and that Appellant brandished it.

II.     The convictions for kidnapping, aggravated robbery, and having a weapon while under disability were against the manifest weight of the evidence, and not supported by sufficient evidence.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶3} On September 7, 2012, defendant and codefendants, Samuel Trawick ("Trawick"), Celena Glover ("Glover"), Toni Walcott ("Walcott"), and Donte Graves ("Graves") were indicted in connection with a series of offenses that occurred on September 1, 2012.   Counts 1, 2, and 8 charged the defendant with kidnapping, aggravated robbery, and felonious assault, with firearm and forfeiture specifications, stemming from an attack on Terrence Wilson ("Wilson").   Counts 3, 4, and 7 charged the defendant with kidnapping, aggravated robbery, and felonious assault, with firearm and forfeiture specifications, stemming from an attack on Ashanti Eads ("Eads").   Counts 5 and 6 charged him with the kidnapping and aggravated robbery of Steve Harris ("Harris").   Counts 12 and 13 charged the defendant with having a weapon while under disability.

**{¶4}** The defendant pled not guilty and waived his right to a jury trial as to the weapons while under disability charges and the forfeiture specifications. The charges against the codefendants were resolved prior to trial, and the case against the defendant proceeded to a jury trial on February 27, 2013.

**{¶5}** The evidence presented by the state established that on September 1, 2012, Walcott and Glover met up with the defendant and Trawick at a bar called Your Place or Mine. The group went to a second bar and met up with Graves. At approximately 2:30 a.m., after the second bar closed, they left in defendant's blue Chevrolet Cavalier. They decided to go to Glover's house, but defendant first stopped at a house on East 93rd Street and Woodland to buy liquor. When they arrived at the after-hours spot, Walcott and defendant contributed money, but Trawick did not have any money. Walcott, the defendant, and Trawick exited the car to purchase alcohol at the back of the house.

**{¶6}** Eads, Wilson, and Harris also arrived at the after-hours house on East 93rd Street and Woodland in Harris's gray Pontiac SUV. Harris, the driver, walked up to the window to purchase liquor. Harris returned to the SUV and began to smoke marijuana. Trawick approached the SUV and asked if they had marijuana. Wilson gave him approximately $10 worth of marijuana. Trawick called Walcott over to the SUV to look at the marijuana, and she said that they would pay for it, but she and Trawick walked back to the Cavalier. Wilson eventually exited the SUV and told the defendant's group that if they were not going to pay for it, they had to return his marijuana. At that point, Trawick pulled out a gun and said that he was not giving them anything and that Wilson had to

give him all of his money. Harris exited the SUV to check on Wilson, and Trawick made both men lie down on the ground. According to Wilson, the defendant and Trawick both brandished black, semiautomatic handguns during the robbery. Harris and Wilson both threw their money toward the defendant and, according to Walcott, the defendant picked the money up off of the ground.

{¶7} The defendant and Walcott next returned to the SUV. The defendant placed his gun on the arm rest between the front seats and he and Walcott ransacked the car. According to Eads, they took her money, i.e., $150, and Wilson's and Harris's cell phones.[1] Shots were fired after the defendant returned to the Cavalier, and Harris ran from the scene. Defendant's group fled in the Cavalier, and Wilson and Eads pursued defendant's group in the SUV. During the chase, Wilson struck the Cavalier several times and, in response, Trawick fired four of five shots at the SUV.

{¶8} As the cars proceeded to the area of East 55th Street and Kinsman, police cars began to pursue the vehicles. Cleveland police officers Joseph Sedlak ("Officer Sedlak") and Eric Poole ("Officer Poole") observed a blue Cavalier traveling southbound in the area of East 93rd and Kinsman, and a gray SUV striking the Cavalier. Both cars continued on at a high rate of speed, and the officers followed them. The Cavalier made a hard left onto Reno Avenue and the SUV could not keep up. At that point, Wilson jumped out of the SUV and told the officers that the occupants of the Cavalier had just

---

[1]Wilson admitted that he has been convicted of drug-related offenses, but he denied that he is a drug dealer.

robbed them. The officers pursued the Cavalier onto Reno Avenue and stopped it a short distance from Kinsman. According to Officer Sedlak, the defendant was in the driver's seat.

{¶9} During the arrests, a 9mm round of live ammunition and $175 were recovered from Trawick, and $177 was recovered from the defendant. Several cell phones were also recovered from the Cavalier, and when Officer Sedlak had Wilson dial the number of his missing cell phone, a phone recovered from the Cavalier rang. Another cell phone was also recovered from Officer Sedlak's cruiser under the seat where the officer placed the defendant following his arrest.

{¶10} After the occupants of the Cavalier were arrested, Officer Poole retraced the Cavalier's route and found a 9mm firearm and a broken liquor bottle several houses away from the location where the police stopped the Cavalier. The magazine in the firearm was empty; however, because the gun was cracked, for safety reasons it would not have been able to be test fired. According to Poole, Trawick and Walcott both stated that Trawick had thrown the gun out of the window during the chase. Wilson also testified that this weapon was similar to the weapon he had seen at the house where after-hours liquor was being sold. The police could not determine, however, whether shells found in the area were from the 9mm weapon found along the route of the chase. They did determine that the shells all came from the same weapon and were chambered for a 9mm cartridge. Walcott testified that she never observed the defendant with a weapon and that Trawick initiated the robbery. The defendant was not tested for gunshot residue and no

latent prints were recovered from the weapon. No gunshot residue was recovered from Trawick or Graves.

{¶11} Detective Joseph Daugenti testified that the defendant made a statement in which he claimed that his Cavalier was struck by the gray SUV at a stop sign, and as he fled from that vehicle, the police stopped him. The defendant denied participating in a robbery and denied firing shots at the SUV.

{¶12} The evidence presented to the court, outside of the presence of the jury, indicated that in 2008, the defendant was convicted of drug trafficking and escape.

{¶13} On March 5, 2013, the jury found the defendant guilty of the kidnapping charges, with the firearm specifications, in Count 1 as to Wilson and Count 5 as to Harris. The defendant was found guilty of kidnapping, but acquitted of the firearm specifications in Count 3 as to Eads. He was also found guilty of aggravated robbery, with firearm specifications, in Count 2 as to Wilson and Count 6 as to Harris, and guilty of aggravated robbery, but acquitted of the firearm specifications in Count 4 as to Eads. The jury found the defendant not guilty of both felonious assault charges in Counts 7 and 8, and the court found him guilty of having a weapon while under disability in Counts 12 and 13. The matter proceeded to sentencing on April 15, 2013. The court determined that various offenses were allied, and the state elected to have the defendant sentenced for Counts 2, 4, 6, and 12. The court sentenced the defendant to a total of six years for these offenses and three additional years on the firearm specifications.

Evidence Supporting the Firearm Specifications

**{¶14}** R.C. 2923.11(B)(1) defines firearm as follows:

[A]ny deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

**{¶15}** In *State v. Gaines*, 46 Ohio St.3d 65, 69, 545 N.E.2d 68 (1989), the Ohio Supreme Court held that to establish a charge containing a firearm specification, it is not necessary to introduce a gun into evidence, so long as there is some evidence from which the jury might reasonably infer that the defendant used a gun that was operable. The court noted that evidence of a shot fired, the smell of gunpowder, bullets, or bullet holes could be sufficient.

**{¶16}** Later, in *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), the court modified *Gaines*, holding that operability of a firearm may be inferred from all of the circumstances surrounding the crime. *Accord State v. Roscoe*, 8th Dist. Cuyahoga No. 99113, 2013-Ohio-3617; *State v. Nicholson*, 8th Dist. Cuyahoga No. 85977, 2006-Ohio-1569, ¶ 27-28.

**{¶17}** In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, paragraph one of the syllabus, the Ohio Supreme Court held that "the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm" when determining whether a weapon was operable. Since *Thompkins*, a reviewing court may find sufficient evidence to support a firearm specification when the defendant brandished a firearm and implicitly threatened to fire it by pointing it at the victim. *See State v. McElrath*, 114

Ohio App.3d 516, 519, 683 N.E.2d 430 (9th Dist.1996). *See also State v. Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523; *State v. Hayes*, 8th Dist. Cuyahoga No. 93785, 2010-Ohio-5234; *State v. Brooks*, 8th Dist. Cuyahoga No. 92389, 2009-Ohio-5559; *State v. Robinson*, 8th Dist. Cuyahoga No. 80718, 2003-Ohio-156; R.C. 2923.11(B)(2) (trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm).

{¶18} In addition, the Ohio Supreme Court has held that a defendant is subject to a sentencing enhancement on a firearm specification regardless of whether he was the principal or an unarmed accomplice. *State v. Chapman*, 21 Ohio St.3d 41, 42-43, 487 N.E.2d 566 (1986). *See also State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 24 ("It is well settled that an unarmed accomplice can be convicted of an underlying felony, together with a firearm specification, based on an aider and abettor status."). In such a case, the actions of the principal are imputed to the accomplice, and the accomplice may be found to have committed every element of the offense committed by the principal, including possession of the weapon. *State v. Frost*, 164 Ohio App.3d 61, 67, 2005-Ohio-5510, 841 N.E.2d 336 (2d Dist.). *See also State v. Alexander*, 8th Dist. Cuyahoga No. 98941, 2013-Ohio-2533.

{¶19} In this matter, Wilson testified that he observed the defendant and Trawick with black, semiautomatic handguns. He and Eads both testified that the defendant brandished a weapon, pointed it at Wilson and Harris, and ordered them on the ground after Wilson sought payment for the marijuana. Numerous witnesses also testified that

Trawick brandished a weapon and pointed it at the victims during attack. The evidence also indicated that the defendant was armed when he returned to the SUV, that he placed his gun on the arm rest as he and Walcott ransacked the car, and that a shot was fired into the air after they finished. In addition, as Wilson's group chased defendant's group, Trawick fired four or five shots at the SUV. A cracked 9mm weapon was later recovered, as were 9mm shell casings. Trawick had a live 9mm round in his pocket.

**{¶20}** This evidence, if believed, is sufficient to establish the firearm specification. The state presented sufficient evidence that the defendant brandished a firearm and implicitly threatened to fire it by pointing it at the victims. Shots were also fired at the scene and during the chase, and this also established aiding and abetting in the possession of an operable firearm, so we find sufficient evidence to support the firearm specifications. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶21}** In addition, after reviewing the entire record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The evidence clearly demonstrates that the defendant brandished a firearm and implicitly threatened to fire it, shots were also fired at the scene and during the chase, a gun and shells were recovered nearby, and Trawick had a live 9mm round in his pocket. The convictions for the firearm specifications are not against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

**{¶22}** The first assignment of error is without merit.

Kidnapping, Aggravated Robbery, and Weapons Under Disability Convictions

**{¶23}** R.C. 2911.01(A) sets forth the elements of aggravated robbery and provides in part:

No person, in attempting or committing a theft offense * * * shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

**{¶24}** R.C. 2905.01 defines the offense of kidnapping as follows:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(2) To facilitate the commission of any felony or flight thereafter[.]

**{¶25}** The complicity statute, R.C. 2923.03, provides in pertinent part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(2) Aid or abet another in committing the offense[.]

* * *

(C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.
* * *

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal.

{¶26} In this matter, Wilson testified that he observed the defendants with black, semiautomatic handguns, and that they pointed the weapons at him and Harris, ordered them to lie down on the ground, and demanded their money. Eads also testified that the defendant and Trawick brandished a weapon, pointed it at Wilson and Harris, ordered them on the ground after Wilson sought payment for the marijuana, and that the defendant had a weapon while he ransacked the SUV looking for valuables.

{¶27} This evidence, if believed, is sufficient to establish the elements of armed robbery and the elements of kidnapping in relation to the attacks on Wilson and Harris, both as a principal offender and an aider and abetter of Trawick; therefore, we find sufficient evidence to support that offense. Although the defendant insists that there was insufficient evidence to support the attack on Harris because he fled as money was demanded, there was sufficient evidence to establish that the conduct of defendant and Trawick was a substantial step in the armed robbery and kidnapping of Harris and sufficient evidence, therefore, supports this offense.

{¶28} Further, after reviewing the entire record, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in that the conviction must be reversed and a new trial ordered. The evidence compellingly established that the defendant committed an armed robbery and kidnapping of Harris and Eads, attempted to rob and kidnap Harris, and that he also aided and abetted in Trawick's armed robbery,

kidnapping, and attempted offenses against Harris.

**{¶29}** As to the conviction for having a weapon while under disability, R.C. 2923.13(A)(3) provides in relevant part that:

> Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]

**{¶30}** In *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶19, this court held that in order to "have" a firearm or dangerous ordnance within the meaning of R.C. 2923.13, an individual must either actually or constructively possess it. *Id.*, citing *State v. Hardy*, 60 Ohio App.2d 325, 327, 397 N.E.2d 773 (8th Dist.1978). This court stated:

> Actual possession requires ownership and, or, physical control; constructive possession may be achieved by means of an agent. * * *
>
> As we explained, the evidence was sufficient to prove beyond a reasonable doubt that Adams aided and abetted Rankin, the one who actually possessed and brandished the gun. Accordingly, through Rankin, Adams constructively possessed a firearm within the meaning of R.C. 2923.13(A)(3). *See State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673 (evidence sufficient to prove having a weapon while under disability when only codefendant pointed the gun at victims during robbery); *State v. Reed*, 8th Dist. [Cuyahoga] No. 93346, 2010-Ohio-1866 (conviction for having a weapon while under disability upheld despite defendant not being the shooter, but being an active participant in the crimes).

*Adams* at ¶ 16, 19.

**{¶31}** In this matter, the state presented testimony from Wilson and Eads that established that the defendant had a gun during the events at the after-hours liquor house.

The record clearly and compellingly indicated that Trawick had a weapon during this incident and that the defendant's group fired shots at Wilson's group while they fled the scene. This evidence is sufficient to support the defendant's conviction for having a weapon while under disability. In addition, based upon the record as a whole, we do not find the conviction for this offense to be contrary to the manifest weight of the evidence.

**{¶32}** The second assignment of error is without merit.

**{¶33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

KENNETH A. ROCCO, P.J., and
EILEEN A. GALLAGHER, J., CONCUR